UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN DOE,

                    Plaintiff,

            v.                                    Civil Action No. 1:25-cv-1450
                                                  (AMN/ML)
ALBANY LAW SCHOOL, et al.,


                    Defendants.


---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---


                              BOND, SCHOENECK & KING, PLLC

                              *Attorneys for Defendants*
                              22 Corporate Woods Blvd., Suite 501
                              Albany, New York 12211
                              T: 518.533.3000
                              F: 518.533.3299
                              E: sklein@bsk.com
                              E: mbarnett@bsk.com


*Of Counsel:*    Stuart F. Klein, Esq.
                 Michael S. Barnett, Esq.

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

SUMMARY OF ALLEGATIONS ..........................................................................................2

ARGUMENT ...........................................................................................................................7

I.  Legal Standard ........................................................................................................ 7

II.  Prior to Assessing Plaintiff's Claims, Dismissal is Warranted as to Four of the
Defendants ............................................................................................................. 8

III.  Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted ............................. 10

    a.  Counts 1 and 2: Gender Discrimination and Retaliation Claims Against ALS ........ 10

    b.  Count 3: Disability Discrimination Claim Against ALS and GRS .......................... 20

    c.  Remaining Counts: The Court Should Decline to Exercise Supplemental Jurisdiction
Over Plaintiff's State-Law Claims .................................................................... 24

    d.  Count 4: Breach of Implied Contract and Breach of the Covenant of Good Faith and
Fair Dealing Against ALS ............................................................................... 24

    e.  Count 5: Intentional Infliction of Emotional Distress ("IIED") Against All
Defendants ................................................................................................... 29

    f.  Count 6: Negligence and Gross Negligence Against All Defendants ...................... 31

    g.  Count 7: Defamation Against All Defendants ........................................................ 32

CONCLUSION ...................................................................................................................35

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................7

*Attallah v. New York Coll. of Osteopathic Med.*,
    189 A.D.3d 1324 (2d Dep't 2020) ...........................................................25, 26, 27

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................7

*Brief v. Albert Einstein College of Med.*,
    423 Fed. Appx. 88 (2d Cir. 2011)..........................................................................24

*Building Indus. Elec. Contractors Ass'n v. City of New York*,
    678 F.3d 184 (2d Cir. 2012)....................................................................................2

*Chanko v. Am. Broad. Cos. Inc.*,
    27 N.Y.3d 46 (N.Y. 2016) .....................................................................................29

*Chao v. Mount Sinai Hosp.*,
    476 Fed. Appx. 892 (2d Cir. 2012) .......................................................................26

*Clarke v. Trustees of Columbia Univ.*,
    95-cv-10627 (PKL), 1996 U.S. Dist. LEXIS 15620 (S.D.N.Y. Oct. 23, 1996) ....................28

*Coleman v. Grand*,
    523 F. Supp. 3d 244 (E.D.N.Y. 2021) ...................................................................29

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)...................................................................................28

*DiCoby v Syracuse Univ.*,
    191 A.D.3d 425 (1st Dept. 2021)...........................................................................34

*Doe v. Colgate Univ.*,
    457 F. Supp. 3d 164 (N.D.N.Y. 2020)..............................................................11, 12

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)...............................................................................12, 16

*Doe v. Rollins Coll.*,
    77 F.4th 1340 (11th Cir. 2023) ..............................................................................13

*Doe v. Stonehill Coll., Inc.*,
    55 F.4th 302 (1st Cir. 2022)...................................................................................13

*Doe v. Syracuse Univ.*,
    22-cv-644 (TJM), 2023 U.S. Dist. LEXIS 106859 (N.D.N.Y. June 21, 2023) ......................17

*Doe v. Syracuse Univ.*,
    341 F. Supp. 3d 125 (N.D.N.Y. 2018) ...................................................................................32

*Dove v. Fordham Univ.*,
    56 F. Supp. 2d 330 (S.D.N.Y. 1999)......................................................................................10

*Faiaz v. Colgate Univ.*,
    64 F. Supp. 3d 336 (N.D.N.Y. 2014) .........................................................................29, 30, 31

*Fulton v. Goord*,
    591 F.3d 37 (2d Cir. 2009).....................................................................................................21

*Gindi v. N.Y.C. Dep't of Educ.*,
    786 F. App'x 280 (2d Cir. 2019) ..............................................................................................8

*Habitzreuther v. Cornell Univ.*,
    14-cv-1229, 2015 U.S. Dist. LEXIS 112209 (N.D.N.Y. Aug. 25, 2015)...............................27

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009).....................................................................................................24

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003)....................................................................................................20

*Holder v. Bobb*,
    24-cv-2362 (KAM), 2025 U.S. Dist. LEXIS 163790 (E.D.N.Y. Aug. 22, 2025) ..................33

*Hotaling v. Martuscello*,
    24-cv-01216 (AMN), 2025 U.S. Dist. LEXIS 175304 (N.D.N.Y. Sept. 9, 2025)....................8

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005)................................................................................................................17

*Jule v Kiamesha Shores Prop. Owners Assn. Inc.*,
    210 AD 3d 1330 (3d Dept 2022) ............................................................................................32

*Matter of Koper*,
    208 A.D.3d 43 (2d Dept. 2022) ..............................................................................................16

*Lanasa v. Stiene*,
    24-1325, 2025 U.S. App. LEXIS 6775 (2d Cir. March 24, 2025)...........................................33

*Lobaito v. Chase Bank*,
    529 F. App'x 100 (2d Cir. 2013) ..............................................................................................7

iii

*Maas v. Cornell Univ.*,
   94 N.Y.2d 87 (N.Y. 1999) .................................................................................26

*Mahfooz Ahmad v. Day*,
   647 F. Supp. 3d 272 (S.D.N.Y. 2022)...............................................................10

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006)................................................................................8

*May v. Univ. Health Sys. of E. Carolina, Inc.*,
   2021 U.S. Dist. LEXIS 236614 (E.D.N.C. Dec. 9, 2021) ....................................23

*McElwee v. County of Orange*,
   700 F.3d 635 (2d Cir. 2012)..............................................................................23

*Murray v. New York Univ. College of Dentistry*,
   57 F.3d 243 (2d Cir. 1995).................................................................................18

*Noakes v. Syracuse Univ.*,
   369 F. Supp. 3d 397 (N.D.N.Y. 2019) ...............................................................32

*Novick v. AXA Network, LLC*,
   714 Fed. Appx. 22 (2d Cir. 2017).......................................................................31

*Nungesser v. Columbia Univ*,
   169 F. Supp. 3d 353 (S.D.N.Y. 2016).......................................................19, 27, 28

*Oyer v. New York*,
   19-cv-1201 (EAW), 2020 U.S. Dist. LEXIS 173868 (W.D.N.Y. Sept. 22, 2020)................22

*Padiyar v. Albert Einstein College of Medicine of Yeshiva University*,
   73 A.D.3d 634 (1st Dep't 2010) ...................................................................25, 26

*Papaspiridakos v. Educ. Affiliates, Inc.*,
   10-cv-5628 (RJD), 2013 U.S. Dist. LEXIS 129748 (E.D.N.Y. Sept. 11, 2013) ...................27

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
   633 F.3d 81 (2d. Cir. 2011)........................................................................17, 18

*Matter of Powers v St. John's Univ. Sch. of Law*,
   25 N.Y.3d 210 (N.Y. 2015) ...............................................................................26

*Puccinelli v. S. Conn. State Univ.*,
   21-cv-763 (SVN), 2022 U.S. Dist. LEXIS 185281 (D. Conn. Oct. 11, 2022) ......................22

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
   04-cv-704 (RPP), 2005 U.S. Dist. LEXIS 9772 (S.D.N.Y. May 20, 2005) ..........................26

iv

*Ramirez v. Exclusive Mgmt. Sol. Grp., Inc.*,
  24-cv-01786 (MMG), 2025 U.S. Dist. LEXIS 234777 (S.D.N.Y. Dec. 2, 2025) ....................7

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
  53 F. Supp. 3d 705 (S.D.N.Y. 2014)......................................................................31

*Rider v. Uphold HQ Inc.*,
  657 F. Supp. 3d 491 (S.D.N.Y. 2023)......................................................................31

*Roe v. Marshall Univ. Bd. of Governors*,
  145 F.4th 561 (4th Cir. 2025) ...............................................................................20

*Roe v. St. John's Univ.*,
  91 F.4th 643 (2d Cir. 2024) ...........................................................................11, 19

*Rolph v. Hobart & William Smith Colls.*,
  271 F. Supp. 3d 386 (W.D.N.Y. 2017) ...............................................................27, 28, 32

*Routh v. Univ. of Rochester*,
  981 F. Supp. 2d 184 (W.D.N.Y. 2013) ....................................................................30

*Russ v. State Emples. Fed. Credit Union*,
  298 A.D.2d 791 (3d Dept. 2002) ...........................................................................35

*Scalise v. Herkimer, Fulton, Hamilton & Otsego County BOCES*,
  16 A.D.3d 1059 (4th Dept. 2005) ..........................................................................34

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017)...........................................................................32, 33

*Thompson v. Racette*,
  519 F. App'x 32 (2d Cir. 2013) ..............................................................................7

*Valencia v. Lee*,
  316 F.3d 299 (2d Cir. 2003)...................................................................................24

*Vasquez v. Reilly*,
  15-cv- 9528 (KMK), 2017 U.S. Dist. LEXIS 33968 (S.D.N.Y. Mar. 9, 2017)....................21

*Ward v. New York Univ.*,
  99-cv-8733 (RCC), 2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sep. 28, 2000)......................28

*Yusuf v. Vassar College*,
  35 F.3d 709 (2d Cir. 1994)....................................................................................11

*Zonshayn v. Sackler Sch. of Med.*,
  648 F. Supp. 3d 485 (S.D.N.Y. 2023)......................................................................27

v

**Statutes**

18 U.S.C. § 1519 ................................................................................................................16

20 U.S.C. § 1681 ................................................................................................................11

28 U.S.C. § 1332 ................................................................................................................24

28 U.S.C. § 1367 ................................................................................................................24

42 U.S.C. § 12102(1)(A) ...................................................................................................21

**Other Authorities**

CPLR § 217 ........................................................................................................................27

CPLR § 3016(a) .................................................................................................................33

22861662.v1-1/13/2026

Defendants[1], by and through their attorneys, Bond, Schoeneck & King PLLC, submit this memorandum of law in support of their Rule 12(b)(6) motion to dismiss Plaintiff's Amended Complaint (dkt. no. 54) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

In fall 2024, Plaintiff, a first-year student at ALS, became the subject of a harassment and stalking complaint made by another student (the "Complainant"). When asked to respond, Plaintiff lied about what had happened. He provided ALS with what he claimed were text messages exchanged between him and the Complainant. Plaintiff later admitted to falsifying these text messages – that is, he had knowingly submitted false evidence to law school administrators in the context of a Title IX investigation. Not surprisingly, given the seriousness of the Plaintiff's admitted misconduct, ALS expelled him in March 2025.

The crux of Plaintiff's Amended Complaint is that he should not have been expelled. Yet Plaintiff did not immediately seek reinstatement in an Article 78 proceeding filed against ALS in state court. Instead, many months later, he filed this scattershot Complaint in federal court against 13 defendants, including the Complainant who reported him for harassment and stalking, and two recent ALS graduates who, when they were students last year, told Plaintiff he was no longer welcome on the rugby club.

Plaintiff's Complaint should be dismissed in its entirety; all of his claims fail as a matter of law. His gender discrimination claims are conclusory, based on a few emails that he mischaracterizes and misleadingly quotes, and provide no basis for plausibly inferring that he was discriminated against because he is male, or retaliated against because he complained of

---

[1]    Defendants are Albany Law School ("ALS"), Grand River Solutions, Inc. ("GRS"), Cinnamon Carlarne, Jenean Taranto, Rosemary Queenan, Dawn Barker Floyd, Joan Cook, Jackie Moran, Keith Hirokawa, Michael Wetmore, Sophia Wilder, Michael Reid, and James Lauria.

1

gender discrimination. Plaintiff also brings a disability discrimination claim, yet fails to plausibly allege how he is disabled and how ALS denied him access to educational opportunities because of his disability.

These gender and disability discrimination claims are based on extensive criticism of ALS' disciplinary process, but devoid of what Plaintiff actually needs to plead – plausible allegations of discrimination on the basis of gender and disability. These claims also ignore the only plausible explanation for what happened to Plaintiff – that he was expelled not because of who he is, but because he brazenly fabricated evidence in a shameful attempt to contest a Title IX complaint. Plaintiff's state-law claims – over which the Court should decline supplemental jurisdiction – are also fatally flawed. His breach of contract claim against ALS could have been properly brought only in an Article 78 proceeding, and his negligence claim is duplicative of the contract claim. Plaintiff's claims of intentional infliction of emotional distress and defamation, brought against all 13 defendants, are implausibly based on allegations that all of the defendants, at unspecified points in time over the course of nearly a year, each called him a "stalker," a "harasser," and a "criminal," among other things. But Plaintiff does not sufficiently allege that any defendant ever said any of these things about him. For these reasons, as elaborated on below, Plaintiff's Complaint should be dismissed in its entirety.

## SUMMARY OF ALLEGATIONS

In his Amended Complaint ("AC"), as well as Exhibit A attached thereto (dkt. no. 54-1), Plaintiff alleges as follows:[2]

---

[2]    In addressing the sufficiency of a complaint, courts are required to accept the factual allegations contained within the complaint as true. *Building Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012).

ALS is a law school that receives federal funding and GRS is its Title IX contractor. AC ¶¶ 18-19. Plaintiff was enrolled at ALS during the fall 2024 and spring 2025 semesters. AC ¶ 31. On October 31, 2024, a female ALS student (the Complainant) met with Dean Taranto to discuss her concerns about Plaintiff. Id. ¶ 36. Following that meeting, Dean Taranto sent an email titled "Student Situation" to ALS' Title IX coordinator, Jackie Moran, as follows[3]:

> Hi Jackie,
>
> I have a seemingly urgent matter. I spoke with one of our students, [Complainant] who is a 1L. There is another 1L male student, [Plaintiff] who is stalking her. Since the first few days of school, he has been texting and following her. He has engaged in some very concerning conduct which she can describe to you in greater detail. Could you please reach out to her as soon as possible. I am also concerned because she seems to think she can handle aspects of this, and I do not want her placing herself in a bad position. I told her not to engage him and to trust you.
>
> Thank you, Jackie!
> Jenean

AC ¶¶ 37-38; *see also* Taranto Decl. Ex. 1 (copy of entire email). Also on October 31, Plaintiff, apparently unaware that the Complainant had spoken to Taranto about him, asked Taranto to meet so that he could discuss concerns he had about the Complainant. Id. ¶ 42. Taranto scheduled a meeting with Plaintiff for the very next day, but Plaintiff then canceled the meeting. Id. ¶¶ 43-44. Following her receipt of Taranto's email, Moran contacted the Complainant and encouraged her to file a Title IX complaint, assuring her that the school would "support her and

---

[3]   Defendants respectfully ask the Court to take into account the entirety of this email in assessing whether Plaintiff's claims are plausible and well-pled, because this email is extensively referenced in and integral to the Amended Complaint, with Plaintiff claiming, for instance, that "[t]his October 31, 2024 communication fixed the institutional narrative before any complaint, investigation, or notice." AC ¶ 41. Plaintiff cites or refers to the October 31 email (whose content he mischaracterizes) more than 20 times. *See* id. ¶¶ 5, 9, 37-41, 44-45, 49 (footnote 2), 54-55, 72, 75, 82, 85, 89, 113-15, 117, 133, 136, 162, 174, 198. If the Court elects not to consider the full email, and accepts as true only the Amended Complaint's characterization of it, Defendants would still argue that Plaintiff fails to state any claim for relief.

3

protect her as a woman" from "male retaliation." Id. ¶ 45. The Complainant then filed a Title IX

complaint with ALS. Id. ¶ 46.

Moran sent an email to Plaintiff titled "No Contact Directive." AC ¶¶ 49, 57; Taranto

Decl. Ex. 2 (copy of entire November 12, 2024 email with attachment). The email attached a

letter to Plaintiff, explaining that ALS' Title IX Coordinator was issuing a "mutual, non-punitive

No Contact Directive" that directed both the Plaintiff and the Complainant to avoid having

further contact with each other. Taranto Decl. Ex. 2. In her email to Plaintiff, Moran explained

that she was issuing this directive "based on information I received from [the Complainant]

alleging that you engaged in behavior that could potentially constitute sexual harassment and/or

stalking." Id. Moran further wrote[4]:

> The No Contact Directive is not an indication of responsibility for a violation of
> Albany Law School policy. However, please be reminded that Law School
> policies prohibit sexual harassment, which includes unwelcome conduct of a
> sexual nature (including repeated expressions of romantic interest) that create a
> hostile living or learning environment. The Law School's policies also prohibit
> stalking, which is defined as engaging in a course of conduct directed at a specific
> person, that would cause a reasonable person to fear for the person's safety, the
> safety of others, or suffer substantial emotional distress. Additionally, Law School
> policies prohibit retaliation, which is defined as any conduct that intimidates,
> threatens, coerces, discriminates against, harasses or in any other way seeks to
> discourage participation in or activity under school policy. We expect that you
> will comport with the Law School's policies moving forward and not engage in
> any behaviors that might constitute prohibited misconduct.

Id. Plaintiff objected to prejudicial language in Moran's email and/or letter, and requested

assurances that his Title IX due process rights would be respected; no such assurances were

provided. Id. ¶ 50. Plaintiff complied with the No-Contact Directive, and requested clarification

---

[4] Defendants respectfully ask the Court to take into account the entirety of this email in assessing whether
Plaintiff's claims are plausible and well-pled, because this email is extensively referenced in and integral
to the Amended Complaint. Plaintiff cites or refers to the November 12 email and attached letter at least
five (5) times. *See* AC ¶¶ 49-50, 57, 59-60. If the Court elects not to consider the full email, and accepts
as true only the Amended Complaint's characterization of it, Defendants would still argue that Plaintiff
fails to state any claim for relief.

and reasonable schedule accommodations; both requests were denied. Id. ¶ 58. Plaintiff also sought a fair resolution of the Title IX Complaint from Associate Dean Queenan, who told Plaintiff that the Complainant was "obviously raising these concerns for a reason." Id. ¶ 52. On November 23, 2024, Moran helped the Complainant formulate her allegations and structure her complaint. Id. ¶¶ 60-61. Moran did not provide comparable assistance to Plaintiff in his defense. Id. ¶ 62.

In December 2024, Plaintiff disclosed that he had fabricated text messages between him and the Complainant. AC ¶ 68. He made this disclosure with "complete transparency and genuine remorse." Id. ¶ 69. In January 2025, Plaintiff met with Taranto, who said she anticipated resolving the fabrication issue through a written reprimand and minor consequences. Id. ¶¶ 71-72. Taranto referred Plaintiff's fabrication of evidence to a disciplinary panel. Id. ¶¶ 73-74.

In January 2025, after he admitted to fabricating evidence in the Title IX proceeding, Plaintiff began objecting to "sex-based bias." Exhibit A at pp. 1-2. He also started requesting mental health accommodations. Id. These requests were ignored or denied. Id. Plaintiff has acute anxiety, panic disorder, and "stress-related conditions," and the requested accommodations were "flexibility in timing, clarity of process, access to information necessary to prepare a response, and accommodations designed to mitigate the effects of acute anxiety during ongoing disciplinary and Title IX proceedings." AC ¶¶ 145, 148. Around February 2025, the ALS rugby club's leadership became aware of the Title IX Complaint pending against Plaintiff. Id. ¶ 80. The club's leaders, Lauria and Reid, "terminated" Plaintiff from the club in order to "uphold standards." Id.

ALS ultimately expelled Plaintiff for fabricating text messages between him and the Complainant. AC ¶ 10. On March 21, 2025, at 9:30 p.m., Plaintiff received an email from the

disciplinary panel members, Professors Hirokawa and Wetmore, notifying him of his dismissal from ALS "without prior notice, hearing, or opportunity to respond." Id. ¶ 91.

On October 1, 2025, Plaintiff received notice that the Title IX Complaint against him had been dismissed due to "institutional discretion." AC ¶ 102.

Plaintiff alleges "upon information and belief" that Carlarne, Taranto, Queenan, Wilder, Moran, Hirokawa, and Wetmore, between October 31, 2024 or November 1, 2024 and October 16, 2025, "published" messages labeling Plaintiff as a "stalker," "harasser," and a "criminal," among other things. AC ¶¶ 48, 53, 79, 82, 89. He also alleges that Lauria and Reid, during the spring 2025 semester, published messages to rugby club members via text messages calling Plaintiff "disturbing," a "stalker," a "harasser," and a "criminal"; they also said the same things verbally to other students including rugby club members. Id. ¶¶ 83-84. Plaintiff also alleges "[u]pon information and belief" that between August 2025 and October 2025, Barker Floyd and Cook "published" to various parties statements that Plaintiff was "dangerous," a "stalker," and a "harasser," among other things. Id. ¶ 106.

Plaintiff alleges that Complainant contacted his former spouse and made "inflammatory statements intended to disrupt Plaintiff's family relationships and emotional stability." AC ¶ 77. He also alleges that after his initiation of this litigation, the Complainant made a formal harassment complaint to the New York State Police in which she described Plaintiff as "dangerous," a "stalker," a "harasser," a "sexual predator," and a "criminal." Id. ¶ 109.

Plaintiff alleges "[u]pon information and belief" that at least one female student in the academic years 2023-2025, who was accused of academic dishonesty involving "altered submissions," was sanctioned with probation rather than dismissal. AC ¶ 138. Plaintiff alleges "[u]pon information and belief" that at least one "non-disabled student (or without diagnosed

mental health conditions)" in the academic years 2023-2025, who was accused of academic dishonesty involving "altered submissions," was sanctioned with probation rather than dismissal. Id. ¶ 97.

## **ARGUMENT**

### I.    **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Plausibility requires factual content allowing the court to draw a reasonable inference of liability. *Ramirez v. Exclusive Mgmt. Sol. Grp., Inc.*, 24-cv-01786 (MMG), 2025 U.S. Dist. LEXIS 234777, at *7-8 (S.D.N.Y. Dec. 2, 2025) (citing *Ashcroft*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 558).

While the Second Circuit maintains that *pro se* complaints must be construed liberally, such complaints remain subject to dismissal under Rule 12(b)(6). *Lobaito v. Chase Bank*, 529 F. App'x 100, 101 (2d Cir. 2013). A court reads *pro se* complaints with special solicitude and interprets them to raise the strongest claims that they suggest, yet the complaint must still plead enough facts to state a claim to relief that is plausible on its face. *See*, *e.g.*, *Thompson v. Racette*, 519 F. App'x 32, 33 (2d Cir. 2013). Thus, while *pro se* litigants benefit from liberal construction

principles, they are nonetheless required to comply with the ordinary rules of civil litigation and cannot escape dismissal merely by virtue of their *pro se* status if their pleadings fail to meet basic requirements. *See, e.g.*, *Gindi v. N.Y.C. Dep't of Educ.*, 786 F. App'x 280 (2d Cir. 2019).

In considering a motion to dismiss, a court is typically restricted to considering whether the allegations, as contained within the four corners of the complaint (and any attachments thereto), are well-pled. But where, as here, a complaint references a few specific communications that are integral to plaintiff's claims, the court may consider those communications as well in deciding whether a plaintiff's claims should survive a motion to dismiss. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 397-398 (2d Cir. 2006); *see also Hotaling v. Martuscello*, 24-cv-01216 (AMN), 2025 U.S. Dist. LEXIS 175304, *8 (N.D.N.Y. Sept. 9, 2025) ("Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are 'integral' to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings").

## II.    Prior to Assessing Plaintiff's Claims, Dismissal is Warranted as to Four of the Defendants

Plaintiff has sued 13 defendants. There are four (4) defendants – Cinnamon Carlarne, Rosemary Queenan, Dawn Barker Floyd, and Joan Cook – against whom Plaintiff makes no specific allegations relating to the state-law claims he purports to bring against them, which are intentional infliction of emotional distress ("IIED"), negligence and gross negligence, and defamation.

**Carlarne** is ALS' President and Dean. Outside of the case caption and a description of her as a defendant, the Amended Complaint mentions Carlarne once, to allege that at unspecified points in time during an approximately 11-month date range, she "published to various parties

through numerous outlets" that Plaintiff was "dangerous," a "stalker," a "harasser," a "sexual predator," and a "criminal." AC ¶ 48. Plaintiff does not allege what statements Carlarne actually made, when, how, and to whom. These allegations are insufficient to state an IIED, negligence or defamation claim against Carlarne and, accordingly, she should be dismissed from this action.

**Queenan** is an ALS Professor and Associate Dean of Academic Affairs. Outside of the case caption and a description of her as a defendant, the Amended Complaint discusses Queenan twice. First, Plaintiff alleges that he met with her to seek a "fair resolution" of the Title IX Complaint, at which point Queenan told him that the Complainant was "obviously raising these concerns for a reason." AC ¶ 52. Second, Plaintiff alleges that at unspecified points in time during an approximately year-long range, Queenan "published messages" to "various personnel and students" in which Plaintiff was described as "disturbing," a "stalker," a "harasser," and a "criminal." Id. ¶ 53. Plaintiff does not allege what defamatory statements Queenan actually made, when, how, and to whom. These allegations are insufficient to state an IIED, negligence or defamation claim against Queenan and, accordingly, she should be dismissed from this action.

**Barker Floyd** and **Cook** are each alleged to have been a Title IX "administrator" who eventually dismissed the Title IX complaint against the Plaintiff. AC ¶¶ 67, 104. Additionally, Plaintiff alleges that Barker Floyd and Cook, over an approximately two-month time span, "published to various parties through numerous outlets" that Plaintiff was "dangerous," a "stalker," a "harasser," a "sexual predator," and a "criminal." Id. ¶ 106. Plaintiff does not allege what statements Barker Floyd and Cook actually made, when, how, and to whom. These allegations are insufficient to state an IIED, negligence, or defamation claim against Barker Floyd and Cook and, accordingly, each should be dismissed from this action.

The Court should dismiss the Complaint against Defendants Carlarne, Queenan, Barker Floyd, and Cook because each is only briefly mentioned in a 217-paragraph Amended Complaint and Plaintiff makes no specific allegations regarding any of them. *See, e.g.*, *Mahfooz Ahmad v. Day*, 647 F. Supp. 3d 272, 280-81 (S.D.N.Y. 2022) (declining to grant leave to *pro se* plaintiff's motion to amend a complaint to add claims against a party whose alleged conduct was lumped in with other defendants without adequate specification as to what that party did); *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted") (internal quotations, citations omitted). Accordingly, the Court should dismiss these defendants from the case.

## III.    Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

### a.    Counts 1 and 2: Gender Discrimination and Retaliation Claims Against ALS[5]

Plaintiff sues ALS for Title IX gender discrimination and retaliation in violation of 20 U.S.C. § 1681 *et seq*. The Amended Complaint fails to sufficiently allege how he was discriminated against because of gender, or how he was retaliated against because he made a complaint of gender discrimination. Gender discrimination is not plausible because ALS expelled Plaintiff as a result of his brazen and elaborate falsification of evidence; even from the Amended Complaint and attached Exhibit A, it is apparent that the expulsion had nothing to do with Plaintiff's gender, or gender discrimination or retaliation, and had everything to do with Plaintiff's failure to abide by the minimum standards of candor and honesty required of any law

---

[5] Plaintiff's retaliation claim is Count 1 and his gender discrimination claim is Count 2, but it is more efficient to discuss these claims in reverse order.

student. The result – his expulsion from ALS – is one with which Plaintiff vehemently disagrees, but it is not enough to allege that a school reached the wrong conclusion, or that the disciplinary process was flawed; a plausible allegation of gender bias is key. *See Roe v. St. John's Univ.*, 91 F.4th 643, 654 (2d Cir. 2024) ("allegations of a deficient Title IX investigation may not be enough to enable a plaintiff to survive a motion to dismiss"); *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) ("allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss").

Lawsuits attacking student disciplinary proceedings on the grounds of gender bias, pursuant to 20 U.S.C. § 1681, generally fall into two categories. *Yusuf*, 35 F.3d at 715. The first category are "erroneous outcome" cases in which the plaintiff alleges that he did not commit the misconduct charged and, because of gender bias, was wrongly found to have committed an offense. *Id*. The second category are "selective enforcement" cases asserting that, regardless of a student's guilt or innocence, "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id*.

With reference to Count 2, the Amended Complaint alleges selective enforcement and that ALS' decision to initiate Title IX proceedings was motivated by gender bias. *See*, *e.g.*, AC ¶ 132. "To support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Doe v. Colgate Univ.*, 457 F. Supp. 3d 164, 172 (N.D.N.Y. 2020) (quoting *Yusuf v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015)). Additionally, "[t]he male plaintiff must show that 'the University's actions against [the male plaintiff] were motivated by his gender and that a similarly situated woman would not have been subjected to the same

disciplinary proceedings.'" *Id.* "A complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent … if it pleads specific facts that support a minimal[ly] plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).

Plaintiff does not plead specific facts supporting a minimally plausible inference of gender discrimination by selective enforcement. Dean Taranto's October 31, 2024 email to Moran is the centerpiece of the Amended Complaint. *See* AC ¶¶ 5, 9, 37-41, 44-45, 49 (footnote 2), 54-55, 72, 75, 82, 85, 89, 113-15, 117, 133, 136, 162, 174, 198. Plaintiff asserts that this communication "was forwarded to and relied upon by the Title IX office and shaped subsequent institutional actions, including discouragement of informal resolution, solicitation of a complaint, and imposition of restrictive measures," and "fixed the institutional narrative before any complaint, investigation, or notice." Id. ¶¶ 40-41.

In Plaintiff's telling, the October 31 email labeled his behavior as "stalking," "harassing" and "concerning," thus treating him as "presumptively guilty" and characterizing him in "criminal terms," before any investigation had taken place. AC ¶ 37. But Plaintiff mischaracterizes and misleadingly quotes from this email, which reads in full as follows:

> Hi Jackie,
>
> I have a seemingly urgent matter. I spoke with one of our students, [Complainant] who is a 1L. There is another 1L male student, [Plaintiff] who is stalking her. Since the first few days of school, he has been texting and following her. He has engaged in some very concerning conduct which she can describe to you in greater detail. Could you please reach out to her as soon as possible. I am also concerned because she seems to think she can handle aspects of this, and I do not want her placing herself in a bad position. I told her not to engage him and to trust you.
>
> Thank you, Jackie!

Jenean

Taranto Decl., Ex. 1. There is nothing in this email that remotely suggests gender bias. From the

full context of the email – which starts with Taranto saying she has a "seemingly urgent matter"

following a discussion with a 1L – it is evident that Taranto is merely summarizing the

Complainant's allegations rather than reaching conclusions about Plaintiff's conduct. Her

description of Plaintiff as a "1L male student" is simply a succinct description of who he is; there

are no gender-based connotations, stereotypes, preconceptions, prejudgments, or prejudices.

(Plaintiff objects to Taranto labeling him a "male 1L," but of course her email would have

conveyed the same gender information had she omitted "male" while still referring to him by

male pronouns.) Taranto asks Moran to "reach out to [the Complainant] as soon as possible,"

expresses concern regarding Complainant's thought about handling "aspects of this," and relates

that she told Complainant to trust Moran. As a Dean, Taranto was permitted to show concern and

solicitude for a student reporting another student's harassing and stalking behavior; such concern

does not indicate bias against the Plaintiff, let alone bias against the Plaintiff because of his

gender. *See, e.g.*, *Doe v. Rollins Coll.*, 77 F.4th 1340, 1358 (11th Cir. 2023) ("any inference of

bias by [a school official] in favor of Roe may be a bias in favor of reporting/complaining

parties, and not a bias in favor of females"); *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 334 (1st

Cir. 2022) ("deference to Roe, without more, does not show that her treatment – or Doe's – is

attributable to sex rather than to some other reason, such as Roe's status as the complainant").

Moreover, from the Amended Complaint it is also evident that Taranto showed solicitude and

concern for Plaintiff. On October 31 – the same day she sent the email to Moran – Taranto

13

agreed to meet with Plaintiff the following day to discuss his concerns about the Complainant.

AC ¶¶ 42-43. But Plaintiff canceled the meeting.[6] Id. ¶ 44.

The Complaint mentions only one other specific communication, though not clearly by

date. In Plaintiff's telling, "Ms. Moran emailed Plaintiff stating that the institution 'expected

[him] to follow policy moving forward' and 'not to engage in further behaviors constituting

misconduct,' and scolded him for 'repeated expressions of romantic interest.'" AC ¶ 49.

According to Plaintiff, this email treated him as "presumptively guilty." Id. But he misquotes and

mischaracterizes Moran's November 12, 2024 email to him, which reads in pertinent part as

follows:

> The No Contact Directive is not an indication of responsibility for a violation of
> Albany Law School policy. However, please be reminded that Law School
> policies prohibit sexual harassment, which includes unwelcome conduct of a
> sexual nature (including repeated expressions of romantic interest) that create a
> hostile living or learning environment. … We expect that you will comport with
> the Law School's policies moving forward and not engage in any behaviors that
> might constitute prohibited misconduct.

Taranto Decl., Ex. 2. Moran did not tell Plaintiff "not to engage in further behaviors constituting

misconduct," implying that he had already violated ALS rules. In fact, she told him "that [w]e

expect that you will comport with the Law School's policies moving forward and not engage in

*any* behaviors *that might constitute* prohibited misconduct" (emphasis added). There is no

indication from this sentence that Moran believed Plaintiff had already violated ALS rules, and

in the same email she had told him that "[t]he No Contact Directive is not an indication of

responsibility for a violation of Albany Law School policy." Taranto Decl., Ex. 2. There was also

---

[6] For these same reasons, there was nothing wrong about Moran helping the Complainant formulate her allegations and structure her complaint, as Plaintiff alleges. Plaintiff claims that he never received comparable assistance, but that is not suggestive of anti-male bias and he canceled his November 1 meeting with Taranto where he could have initiated the process of filing a complaint against the Complainant.

14

no "scolding" regarding expressions of romantic interest. Rather, Moran was reminding Plaintiff that the definition of sexual harassment included "unwelcome conduct of a sexual nature (including repeated expressions of romantic interest) that create a hostile living or learning environment." It is evident that Moran had not prejudged Plaintiff based on an accusation, and was simply reminding him of ALS policies. As he does with Taranto's October 31 email, Plaintiff casts Moran's November 12 email in a nefarious light by mischaracterizing it and quoting it out of context. And even if Moran's email were as prejudgmental and scolding as Plaintiff claims, such an email would still not be suggestive of gender bias, which is what Plaintiff must allege.

The Amended Complaint alleges only one other instance in which any Defendant made a comment referring to someone's gender. Plaintiff alleges that Moran contacted the Complainant and encouraged her to file a Title IX complaint, assuring her that the school would "support her and protect her as a woman" from "male retaliation." AC ¶ 45. But Plaintiff – an admitted fabricator of evidence, who does not claim to have witnessed this statement – fails to specifically allege where, when and how this statement was made. Moreover, Plaintiff's submission of falsified evidence to ALS, as part of his attempt to refute the Title IX Complainant's allegations, is itself evidence that the Title IX Complaint was well-founded, as was ALS' decision to commence an investigation. Because if the Title IX Complaint were baseless, Plaintiff would not have falsified evidence; his misconduct is therefore a strong indication that the Title IX Complaint had merit, and that ALS' decision to investigate Plaintiff was not the product of the bias he claims.

Plaintiff's Complaint also fails to allege how ALS' disciplinary process was biased against men; for instance, Plaintiff does not specifically allege that other male students have

15

suffered from supposed prejudice. He alleges "[u]pon information and belief" that at least one female student in the academic years 2023-2025, "who was accused of academic dishonesty involving altered submissions," was "sanctioned with probation" rather than dismissal, AC ¶ 96, but this allegation is vague, conclusory and not a suitable comparator for his situation. He does not identify or describe this supposed female student, nor does he explain the nature of the female student's "altered submissions" in an academic context. Moreover, a punishment of probation for "altered submissions" – whatever that might mean – is consistent with a much harsher punishment for the falsification of evidence in a Title IX proceeding. Plaintiff's serious misconduct would be grounds for disbarment if he were a lawyer[7]; in certain contexts, falsifying evidence can be a crime.[8] Expulsion, therefore, was an appropriate sanction that ALS had the discretion to impose, and is not indicative of gender bias vis-à-vis one unidentified female student who, at some point within the last three years, allegedly received probation for "altered submissions" in an academic context.[9]

Nor does Plaintiff claim that ALS' Title IX process had previously been the subject of public scrutiny that could have resulted in subsequent bias toward men. *Cf. Doe v. Columbia Univ.*, 831 F.3d at 57 (complaint's allegation of "substantial criticism" of the university's student disciplinary process for failing to take seriously female reports of male sexual assault made it plausible that the university's decision makers were motivated to favor the accusing female over

---

[7] *See*, *e.g.*, *Matter of Koper*, 208 A.D.3d 43 (2d Dept. 2022) (ordering disbarment of attorney who fabricated and destroyed evidence in a bankruptcy proceeding).

[8] *See*, *e.g.*, 18 U.S.C. § 1519.

[9] Plaintiff's claims that Professors Keith Hirokawa and Michael Wetmore had "preexisting bias against male respondents," and expressed and endorsed views that female complainants are inherently more credible and need to be protected from men, AC ¶¶ 86-87, are conclusory and irrelevant. As alleged, Professors Hirokawa and Wetmore had no involvement in the Title IX investigation. Rather, they constituted the disciplinary committee that expelled Plaintiff for fabricating evidence.

16

the accused male). Plaintiff's failure to sufficiently allege that ALS' disciplinary process is biased against men is yet another basis for dismissing his gender discrimination claim. *See*, *e.g.*, *Doe v. Syracuse Univ.*, 22-cv-644 (TJM), 2023 U.S. Dist. LEXIS 106859, *42 (N.D.N.Y. June 21, 2023) (holding that plaintiff failed to state a selective enforcement claim where he "has not alleged that the University refused to undertake investigations of female classmates accused of conduct similar to his").

Having failed to sufficiently allege gender discrimination, Plaintiff's retaliation claim against ALS (Count 1) should also be dismissed. The Supreme Court has held that "when a funding recipient retaliates against a person because he complains of sex discrimination, th[at] constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). A retaliation claim requires allegations that ALS retaliated against Plaintiff as a result of his making a gender discrimination complaint. Plaintiff must allege that (1) he engaged in protected activity, (2) defendant had knowledge of such protected activity, (3) plaintiff suffered adverse, school-related action, and (4) a causal connection existed between protected activity and adverse action. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d. Cir. 2011). Protected activity means, for pleading purposes, a sufficient allegation that a plaintiff "complain[ed] of sex discrimination." *Jackson*, 544 U.S. at 174. It is not enough for a plaintiff to allege that he defended himself as a Title IX respondent, or complained of procedural irregularities, or requested accommodations; a plausible allegation that a plaintiff complained of gender discrimination, or otherwise engaged in protected activity, is key. For instance, in *Papelino*, the Second Circuit reversed the dismissal of a retaliation claim because the plainitff had sufficiently alleged that he complained to school officials about teacher sexual harassment prior to school officials accusing him of cheating.

17

*Papelino*, 633 F.3d at 92-93. *See also Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 251 (2d Cir. 1995) (affirming Rule 12(b)(6) dismissal of retaliation claim because the plaintiff had failed to allege a causal connection between a university committee's recommendation that she be required to repeat her studies and her complaint of sexual harassment).

Plaintiff fails to plead a retaliation claim. Much of the protected activity he alleges does not involve a complaint of gender bias – "[r]equesting assurance of neutrality and due-process protections in the Title IX process," "seeking informal resolution and de-escalation of the matter," "[r]equesting reasonable mental-health-related accommodations during ongoing proceedings," and "[r]eporting retaliatory and stigmatizing conduct by institutional actors and student organizations." AC ¶ 119. Plaintiff's alleged complaints of unfairness and procedural irregularities, unmoored from any expressed concern about gender bias, do not constitute protected activity.

Plaintiff also alleges that he "[o]bjected in writing to sex-based prejudgment and biased language," and "[t]hreaten[ed] escalation of his concerns to the U.S. Department of Education's Office for Civil Rights and other oversight bodies," AC ¶ 119, but he does not allege when and how he did these things, and the Factual Allegations portion of his pleading, AC ¶¶ 31-117, is silent on these issues. Exhibit A asserts that he complained of "sex-based bias" in January-February 2025, but does not provide any more details, including whether these complaints were made to ALS or GRS, and how. (Nor would it be plausible, based on the facts as pled, that Plaintiff complained of gender bias. He does not allege that any ALS or GRS employee ever communicated with him in a gendered or gender-biased manner; it would therefore be implausible for Plaintiff to have ever raised gender bias as a concern.) Plaintiff alleges that he

18

informed Moran about the rugby club's termination of him, and that Moran "refused to intervene and stated she did not believe it constituted a violation of 'policy,' despite Plaintiff's report that he was being excluded and stigmatized solely on the basis of unresolved allegations." AC ¶ 81. He alleges that the rugby club excluded him because of his status as a Title IX respondent, id. ¶¶ 80-81 – this is not retaliation on the basis of protected activity, nor would his expulsion from the rugby club give rise to a hostile environment claim. *See, e.g.*, *Nungesser v. Columbia Univ*, 169 F. Supp. 3d 353, 367 (S.D.N.Y. 2016) (dismissing claim where plaintiff "alleges neither that he was harassed because of his male gender, nor that he was subjected to sexually harassing conduct that gives rise to a claim for peer harassment under Title IX, so he does not allege discrimination 'on the basis of sex' as required by Title IX"). Accordingly, Plaintiff does not adequately plead that he engaged in protected activity that was known to ALS.

There is also no causal connection between Plaintiff's expulsion and any asserted protected activity. Because (with one exception) Plaintiff does not allege when he engaged in protected activity, he cannot plausibly allege a causal connection between that activity and the adverse school action (his expulsion). Exhibit A does assert (without details) that in January-February 2025, Plaintiff objected to "sex-based bias," but crucially, these objections occurred after he had admitted to fabricating evidence in December. In other words, Plaintiff began claiming anti-male bias only after he understood that he would be punished for faking evidence. When Plaintiff made his admission to serious misconduct, ALS was well within its discretion to start the disciplinary proceeding that resulted in his expulsion. Plaintiff's expulsion, therefore, was not retaliation for protected activity (complaining about gender bias), but a punishment for a serious transgression.[10] *See, e.g.*, *Roe v. St. John's Univ.*, 91 F.4th at 654 ("we cannot turn a

---

[10] Plaintiff claims that Taranto told him in January 2025 that he would face only minor consequences for fabricating text messages. The import of this allegation is unclear, particularly since Taranto's October 31

blind eye to 'an obvious alternative explanation' for alleged facts that undermine a plaintiff's theory of liability"); *Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 570 (4th Cir. 2025) ("Roe's retaliation claim fails [on summary judgment] … as she cannot show that Marshall's proffered reasons for disciplining her were pretextual. Indeed, Roe conceded in the district court proceedings that the University had a legitimate, nonretaliatory reason for charging her under the Student Code").

Finally, Plaintiff claims retaliatory actions besides his expulsion – "[d]enying or ignoring his accommodation requests," "[r]efusing to intervene in retaliatory exclusion and stigmatization by student organizations," and "[m]aintaining stigmatizing records and refusing to convert the dismissal to a withdrawal." AC ¶ 121. But he does not allege how these actions were retaliation for, and causally connected to, his participation in protected activity. For these reasons, Plaintiff fails to state both a gender discrimination claim and a retaliation claim under Title IX.

### b. Count 3: Disability Discrimination Claim Against ALS and GRS

Plaintiff claims that ALS and GRS discriminated against him on the basis of his disabilities, in violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794).

To assert a disability discrimination claim, Plaintiff must allege that (1) he is a qualified individual with a disability; (2) the defendant is subject to the Rehabilitation Act; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). With respect to this third element, a plaintiff can base a disability discrimination claim on any of "three available theories: (1)

---

email is alleged to have started the cascade of anti-male bias of which Plaintiff complains, and yet she is supposed to have told him, months later, that his punishment would be light. In any event, Plaintiff does not claim that Taranto was a member of the disciplinary panel that expelled him, and that panel had a legitimate, non-retaliatory reason for its decision.

intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotations, citation omitted).

Plaintiff's disability discrimination claim fails because he has not alleged facts that would show that he had a disability and was denied access to educational opportunities because of his disability. Also, while Plaintiff alleges that he requested accommodations, he fails to allege facts showing that a specific, reasonable accommodation was requested or denied and that such denial was because of his disability rather than for legitimate educational or disciplinary reasons.

Assuming that ALS and GRS (as ALS' contractor) is each subject to the Rehabilitation Act, Plaintiff has failed to plausibly allege the first element, that he is a "qualified individual with a disability." As relevant here, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Plaintiff has not plausibly alleged a disability, and across his pleadings he has not been consistent about what disability he claims. The Amended Complaint alleges that Plaintiff has acute anxiety, panic disorder, and "stress-related conditions." AC ¶ 145. By contrast, the initial Complaint alleged that Plaintiff has post-traumatic stress disorder (PTSD), anxiety, and severe depression. Complaint ¶¶ 47, 87, 96 (dkt. no. 1). Meanwhile, Plaintiff's most recent preliminary injunction motion claims that he has PTSD, "suicidal ideation," and "therapy participation;" there is no mention of anxiety. Plaintiff's Second Preliminary Injunction Motion at p. 2 (dkt. no. 12). Plaintiff has not consistently alleged a disability, making it implausible that he actually has one.[11]

---

[11] While the Court should ordinarily not go beyond an amended pleading to assess the plausibility of its allegations, it may do so when there are obvious inconsistencies between the initial and amended pleadings. *See*, *e.g.*, *Vasquez v. Reilly*, 15-cv- 9528 (KMK), 2017 U.S. Dist. LEXIS 33968, *10 (S.D.N.Y. Mar. 9, 2017). Here, the Plaintiff filed an Amended Complaint, alleging new disabilities, after Defendant

Regarding the disabilities alleged in the Amended Complaint, Plaintiff does not plausibly allege how any of these conditions "substantially limits" one or more "major life activities," e.g. "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). The Complaint merely alleges, "Plaintiff suffered from documented mental-health impairments, including acute anxiety, panic disorder, and stress-related conditions that substantially limited one or more major life activities, including concentration, sleep, emotional regulation, and the ability to function under high-pressure academic and disciplinary conditions." AC ¶ 145. This is not enough. The Factual Allegations portion of the pleading, AC ¶¶ 31-117, is silent on the issue of Plaintiff's disabilities, and nowhere does he allege when he received these diagnoses, and how he informed ALS and GRS of his disabilities.[12] Of course, acute anxiety, panic disorder, and "stress-related conditions" could be serious and debilitating; but they do not automatically qualify as a statutory "disability" in every instance, and Plaintiff's bare allegation that his conditions interfered with concentration, sleep, emotional regulation, and the ability to function in high-pressure academic and disciplinary conditions, is insufficient. *See*, *e.g.*, *Puccinelli v. S. Conn. State Univ.*, 21-cv-763 (SVN), 2022 U.S. Dist. LEXIS 185281, *36-37 (D. Conn. Oct. 11, 2022) ("Plaintiff alleges that she suffers from anxiety and PTSD, but the amended complaint is devoid of facts demonstrating that these conditions substantially limit any of Plaintiff's major life activities"); *Oyer v. New York*, 19-cv-1201 (EAW), 2020 U.S. Dist. LEXIS 173868, *12 (W.D.N.Y. Sept. 22, 2020)

---

ALS filed an opposition to his motion for a preliminary injunction in which it questioned the disabilities he asserted in his initial Complaint.

[12] For instance, nowhere in the Factual Allegations do the following words appear: "disability," "anxiety," "panic," and "stress." *See* AC ¶¶ 31-117.

(plaintiff failed to allege how he was substantially impaired as a result of his PTSD); *May v. Univ. Health Sys. of E. Carolina, Inc.*, 2021 U.S. Dist. LEXIS 236614, *23 (E.D.N.C. Dec. 9, 2021) ("May does not plausibly allege that her anxiety and depression are disabilities under the ADA because she does not allege that they are so severe that they "substantially limit[] one or more [of her] major life activities'") (quoting 42 U.S.C. § 12102(1)(A)).

Plaintiff's claim of disability discrimination also fails as to the third element, which he characterizes as failure to accommodate. The Amended Complaint alleges that he requested "flexibility in timing, clarity of process, access to information necessary to prepare a response, and accommodations designed to mitigate the effects of acute anxiety during ongoing disciplinary and Title IX proceedings," AC ¶ 148, but the Factual Allegations portion of the pleading, AC ¶¶ 31-117, is silent on the issues of when and how Plaintiff requested accommodations, how these accommodations related to his alleged disability, and how he conveyed to ALS and GRS that these were accommodations requested for a disability as opposed to more generalized complaints about procedural irregularities.

Also, to the extent Plaintiff claims that his fabrication of evidence was borne of a disability and that his request for lenient punishment was his requested accommodation for that disability, *see* AC ¶¶ 152-53, ALS made the permissible and non-discriminatory decision to expel him in view of Plaintiff's serious misconduct and ALS' need to enforce the standards of candor, honesty and integrity required of any law student. *See, e.g., McElwee v. County of Orange*, 700 F.3d 635, 640-641 (2d Cir. 2012) (holding, in the context of an employment discrimination case, that "under the ADA, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability. A requested accommodation that simply excuses past misconduct is unreasonable as

23

a matter of law"); *Brief v. Albert Einstein College of Med.*, 423 Fed. Appx. 88, 91 (2d Cir. 2011)

("for Einstein to have granted Brief's requested accommodation and to have allowed him to

remain as a student, it would have had to ignore his examination failures as well as its own

academic by-laws"); *Harris v. Mills*, 572 F.3d 66, 74 (2d Cir. 2009) ("Even read liberally,

Harris's complaint … alleges, at core, that if only the defendants would 'understand' the impact

of his disabilities, they would be willing to overlook the actions that caused him to lose his

license in the first place. Generally construed, this allegation amounts only to the contention that

Harris's medical licensing qualifications should be relaxed in light of his disability. This is not a

reasonable accommodation claim"). For these reasons, Plaintiff fails to state a disability

discrimination claim.

### c. Remaining Counts: The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State-Law Claims

Plaintiff asks the Court to exercise supplemental jurisdiction over his state-law claims.[13]

AC ¶ 14. Plaintiff has failed to state a federal claim for which relief can be granted. If the Court

dismisses Plaintiff's federal claims against ALS and GRS (Counts 1-3), then it should decline

Plaintiff's request to exercise supplemental jurisdiction over his state-law claims (Counts 4-7)

pursuant to 28 U.S.C. § 1367. *See*, *e.g.*, *Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where

all federal claims have been eliminated, concerns of "judicial economy, convenience, fairness

and comity point towards declining to exercise jurisdiction over the remaining state-law claims")

(internal quotations, citation omitted). In any event, for the reasons set forth below, Plaintiff's

state-law claims also fail as a matter of law and should be dismissed.

### d. Count 4: Breach of Implied Contract and Breach of the Covenant of Good Faith and Fair Dealing Against ALS

---

[13] Plaintiff does not allege diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff alleges an implied contractual relationship with ALS, to which New York law must necessarily apply. Plaintiff alleges that ALS breached this implied contract, and violated the covenant of good faith and fair dealing, by (i) characterizing him as a "stalker," "harasser," or dangerous individual, and by imposing restrictions and consequences before providing formal notice of any complaint, charge, or process; (ii) permitting administrators and decision-makers to prejudge him and to treat allegations as established misconduct prior to investigation or adjudication; (iii); collapsing or bypassing required steps in the disciplinary process; (iv) "disseminating stigmatizing characterizations" of Plaintiff without a legitimate need to do so; (v) imposing the most severe punishment possible; and (vi) treating Plaintiff differently from similarly situated students. AC ¶¶ 162-67.

Plaintiff's contract claim suffers from several fatal flaws. First, where a plaintiff alleges that an academic institution failed to comply with its own standards and policies, the proper avenue for challenging such a decision is through an Article 78 proceeding, not a breach of contract claim. *See e.g.*, *Attallah v. New York Coll. of Osteopathic Med.*, 189 A.D.3d 1324, 1325 (2d Dep't 2020) ("We . . . agree with the Supreme Court's determination directing dismissal of the discrimination, breach of contract, and fraud causes of action asserted against the defendants . . . because those causes of action in actuality challenged the administrative determination expelling the plaintiff from NYCOM, and therefore, should have been asserted in a proceeding pursuant to CPLR article 78 within four months after the challenged determination became final and binding"); *Padiyar v. Albert Einstein College of Medicine of Yeshiva University*, 73 A.D.3d 634, 635 (1st Dep't 2010) (dismissing unlawful discrimination and breach of contract claims and noting that "[t]he instant plenary complaint, while couched in terms of unlawful discrimination and breach of contract, is in fact a challenge to a university's academic and administrative

25

decisions" and thus could only be brought as "a CPLR article 78 proceeding, the appropriate vehicle for such a challenge").

Here, Plaintiff's claim that ALS failed to adhere to its implied contract with him should have been challenged through an Article 78 proceeding in state court. *Attallah*, 189 A.D.3d at 1325; *Padiyar*, 73 A.D.3d at 635. Although Plaintiff attempts to couch his claim as contractual, allegations that an academic institution failed to comply with its own standards or policies are the exact type of claim that an Article 78 proceeding is intended to address. *See Chao v. Mount Sinai Hosp.*, 476 Fed. Appx. 892, 895-96 (2d Cir. 2012) (affirming district court's dismissal of professor's breach of contract claim, agreeing that it should have been brought in an Article 78 proceeding); *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 04-cv-704 (RPP), 2005 U.S. Dist. LEXIS 9772, at *33-34 (S.D.N.Y. May 20, 2005) ("The New York Court of Appeals has stated that '[c]ourts retain a "restricted role" in dealing with and reviewing controversies involving colleges and universities' and that 'CPLR article 78 proceedings are the appropriate vehicle' for such controversies") (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (N.Y. 1999)).

Had Plaintiff brought an Article 78 proceeding, a state court would have asked if ALS had acted "in excess of jurisdiction" or arbitrarily and capriciously, abused its discretion, and/or taken action unsupported by substantial evidence, *see* N.Y. C.P.L.R. §§ 7803(2)-(4), when it expelled him for fabricating evidence – something he admitted to. *See*, *e.g.*, *Matter of Powers v St. John's Univ. Sch. of Law*, 25 N.Y.3d 210, 213 (N.Y. 2015) (upholding private law school's decision to rescind a student's admission, after he had completed three semesters as a part-time student, based on material misrepresentations and omissions in his law school application regarding his criminal history). Plaintiff cannot get around that result, and the highly deferential standard applied to higher education disciplinary standards, by bringing an implied contract claim in federal court.

*See*, *e.g.*, *Zonshayn v. Sackler Sch. of Med.*, 648 F. Supp. 3d 485, 497-498 (S.D.N.Y. 2023) (dismissing a breach of implied contract claim where the university's alleged procedural and substantive errors "do not establish that the university's disciplinary decisions were 'in excess of jurisdiction,' 'arbitrary and capricious or an abuse of discretion,' or not 'supported by substantial evidence'") (quoting N.Y. C.P.L.R. §§ 7803(2)-(4)). Moreover, an Article 78 proceeding must be commenced within 4 months of the issuance of a final and binding determination. CPLR § 217; *Attallah*, 189 A.D.3d at 1325. Plaintiff failed to commence the instant action within 4 months of ALS' March 2025 decision to expel him. Accordingly, Plaintiff's breach of contract claim must be dismissed as procedurally improper and untimely.

Second, assuming that there was an implied contract between Plaintiff and ALS, Plaintiff's breach of contract claim should be dismissed because it rests on generalized promises as opposed to specific contractual commitments. "[T]o state a valid claim for a breach of contract, a plaintiff must state when and how the defendant breached the specific contractual promise." *Habitzreuther v. Cornell Univ.*, 14-cv-1229, 2015 U.S. Dist. LEXIS 112209, *4 (N.D.N.Y. Aug. 25, 2015) (internal quotations, citations omitted).

A student handbook may, in certain circumstances, create an enforceable contract between a student and a higher education institution. *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 405 (W.D.N.Y. 2017); *see Papaspiridakos v. Educ. Affiliates, Inc.*, 10-cv-5628 (RJD), 2013 U.S. Dist. LEXIS 129748, at *11 (E.D.N.Y. Sept. 11, 2013) (holding that a student may "bring a claim for failure to provide 'certain specified services' for which [he] has contracted, such as 'a designated number of hours of instruction, or a specific name on her diploma as set forth in the student catalogue") (internal quotation omitted)). By contrast, unfulfilled "aspirational promises" are not actionable. *Nungesser*, 169 F. Supp. at 370 (holding

27

that "'[g]eneral policy statements' and 'broad and unspecified procedures and guidelines' will not suffice" to establish a breach of contract claim) (quoting *Ward v. New York Univ.*, 99-cv-8733 (RCC), 2000 U.S. Dist. LEXIS 14067, at *10 (S.D.N.Y. Sep. 28, 2000)). For example, a student who alleged that she did not receive the field work supervision she was promised in her student handbook – including a one-and-a-half to two-hour weekly supervision conference – stated a claim. *Clarke v. Trustees of Columbia Univ.*, 95-cv-10627 (PKL), 1996 U.S. Dist. LEXIS 15620, *14-18 (S.D.N.Y. Oct. 23, 1996).

Plaintiff does not make a similarly specific allegation of a contractual breach. The Factual Allegations portion of his pleading, AC ¶¶ 31-117, is silent on what parts of the Student Handbook ALS breached. In stating his contract claim, id. ¶¶ 159-172, he asserts breaches of the Handbook based on his characterizations of what the Handbook says, rather than direct quotations of the specific provisions he contends ALS breached. *See* id. ¶ 160. Additionally, based on these characterizations, his claim appears to be based on "[g]eneral policy statements" and "broad and unspecified procedures and guidelines," *Nungesser*, 169 F. Supp. 3d at 370, as opposed to specific contractual promises, such as the one at issue in *Clarke. See also Rolph*, 271 F. Supp. 3d at 405-06 ("a student asserting a breach of contract claim must identify the specific terms of the implied contract that were allegedly violated by the college (such as an internal rule, regulation, or code), and failure to do so is fatal to the claim").

Finally, Plaintiff's claim of breach of the covenant of good faith and fair dealing should be dismissed as duplicative of his breach of implied contract claim. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of

28

contract claim, based upon the same facts, is also pled"). For these reasons, Plaintiff's contract claim should be dismissed.

### e. Count 5: Intentional Infliction of Emotional Distress ("IIED") Against All Defendants

Plaintiff brings an IIED claim against all 13 defendants.

To plead an IIED claim under New York law, Plaintiff must plausibly allege "(1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 363 (N.D.N.Y. 2014). "New York sets a very high threshold for conduct that is 'extreme and outrageous,'" sufficient to meet these elements. *Id*.

"Clearly, IIED is a highly disfavored cause of action under New York law, one that is almost never successful." *Coleman v. Grand*, 523 F. Supp. 3d 244, 266 (E.D.N.Y. 2021) (internal quotations, citation omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 56 (N.Y. 2016) (internal quotations, citation omitted). In *Chanko*, the New York Court of Appeals held that a hospital and physician's actions, in allowing a patient's emergency room treatment and death to be filmed without consent and then broadcasted as part of a documentary series, were not so extreme and outrageous as to support plaintiffs' cause of action for IIED. *Id*. at 56-58. *See also*, *e.g.*, *Coleman*, 523 F. Supp. 3d at 266 (no IIED claim where counterclaimant alleged that plaintiff used his age and prominence to manipulate her into a sexual relationship, threatened her career, withheld performance opportunities, yelled at her when she declined sex, attended her shows

knowing his presence would distress her, and directed others to repeatedly bully and threaten her with legal action).

Plaintiff claims that "[d]efendants engaged in a deliberate and sustained course of conduct that was extreme and outrageous, exceeded all possible bounds of decency, and was utterly intolerable in a civilized society, particularly within the context of higher education and professional training." AC ¶ 173. He alleges that defendants "brand[ed]" him a "stalker," "harasser" and "dangerous," before any Title IX complaint existed; "disseminat[ed] criminalized and stigmatizing characterizations" to others who had no legitimate need to know; abruptly expelled him on a Friday night, fully aware of his mental-health distress; and "continu[ed] to maintain and republish stigmatizing narratives" after his dismissal. Id. ¶ 174.

Nothing Plaintiff alleges, even if true, comes close to supporting an IIED claim. For instance, it is neither extreme nor outrageous for a law school, on a Friday evening, to expel a student for fabricating evidence. *See*, *e.g.*, *Faiaz*, 64 F. Supp. 3d at 363 (a university's failure to give a student time to review the charges against them, and its failure to consider portions of the student's appeal of a disciplinary decision, did not constitute outrageous conduct beyond the bounds of decency); *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 214 (W.D.N.Y. 2013) (false accusations of criminal conduct do not generally give rise to an IIED claim).

Plaintiff also fails to allege a single, specific act in support of his claim. He claims that all 13 defendants "brand[ed]" him a "stalker," "harasser" and "dangerous," and "maintain[ed] and republish[ed] stigmatizing narratives," but mentions only one specific communication – Taranto's October 31 email, which, as discussed, merely reported to ALS' Title IX Coordinator the accusations made by one student against another. Plaintiff alleges all other communications in the most general terms. In any event, allegedly defamatory communications generally cannot

30

form the basis for an IIED claim. *See Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) (collecting cases). For these reasons, Plaintiff fails to state an IIED claim against any of the 13 defendants.

### f.    Count 6: Negligence and Gross Negligence Against All Defendants

Plaintiff brings a negligence claim against all 13 defendants, alleging they all owed him "a duty to exercise reasonable care in the administration and execution of disciplinary and Title IX-related procedures, including adherence to established policies, safeguards, and federally regulated processes, independent of any academic judgment." AC ¶ 183.

Count 6 must be dismissed for several reasons. First, Plaintiff does not adequately allege a basis for why any defendant other than ALS would owe him a duty of care in the context he describes. He lumps all the defendants together, including the Complainant, two other law students who asked him to leave the rugby club, and various administrators. He provides no explanation as to how any of these people owned him a duty of care.

Second, Plaintiff's negligence claim is duplicative of his breach of contract claim against ALS. Under New York law, a tort claim cannot proceed where it arises from the same facts and seeks the same damages as a breach of contract claim, absent the violation of a legal duty independent of the contract. *See Novick v. AXA Network, LLC*, 714 Fed. Appx. 22, 24 (2d Cir. 2017); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 502 (S.D.N.Y. 2023). Plaintiff has failed to allege any duty, outside of a contractual obligation, that ALS owed him. The duties Plaintiff invokes – fair process, notice, and adherence to disciplinary procedures – are substantively identical to the implied contract terms that he claims ALS breached. Courts dismiss negligence claims in precisely these circumstances. *See*, *e.g.*, *Faiaz*, 64 F. Supp. 3d at 362 (dismissing negligence claim where allegations merely repackaged an alleged failure to follow disciplinary rules).

31

Third, New York does not recognize a tort claim for negligent investigation or prosecution, including in the context of university disciplinary proceedings. Federal and state courts applying New York law have repeatedly held that claims premised on allegedly flawed, biased, or unfair disciplinary investigations are not cognizable in negligence. *See Rolph*, 271 F. Supp. 3d at 409; *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 420–21 (N.D.N.Y. 2019); *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 142 (N.D.N.Y. 2018). Plaintiff's allegations – challenging the manner, fairness, and outcome of ALS's disciplinary process – fall squarely within this barred category of tort claims. For these reasons, Plaintiff fails to state a negligence claim against any of the 13 defendants.

### g.  Count 7: Defamation Against All Defendants

Plaintiff's final claim, for defamation against all defendants, fails on a number of grounds. Plaintiff must plead (1) a false statement of fact regarding himself, (2) published to a third party, (3) made with the applicable level of fault, (4) causing injury, and (5) not protected by privilege. *Jule v Kiamesha Shores Prop. Owners Assn. Inc.*, 210 AD 3d 1330, 1334 (3d Dept 2022). A false statement must be pled with "[s]ome specificity," which is "necessary so defendants and courts may address themselves to the parts of a communication alleged to be false and defamatory instead of those not objected to." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017).

The Amended Complaint is peppered with allegations that, "upon information and belief," over a prolonged period of time, various defendants published false statements referring to Plaintiff as a "stalker," a "harasser," and a "criminal," among other things. *See* AC ¶¶ 48, 53, 79, 82, 89. As an initial matter, the sheer implausibility of these allegations – that more than 10 people each made identical remarks about the Plaintiff over the course of a year – warrants the claim's dismissal. This Court is not required to accept as true allegations that are conclusory,

32

inherently incredible, and defy common sense. Plaintiff also fails to allege the specific

statements that were defamatory, who made them and when, and how exactly they were

published. Compounding the confusion, he has impermissibly lumped all Defendants into a

single defamation count even though, according to the Amended Complaint, Defendants made

various defamatory statements at unspecified times over the course of a year. These deficiencies

are fatal to Plaintiff's defamation claim. Generalized allegations of internal dissemination and

speculative publication do not satisfy the pleading standard. *See* N.Y. CPLR § 3016(a) ("In an

action for libel or slander, the particular words complained of shall be set forth in the complaint

…"); *Tannerite Sports, LLC*, 864 F.3d at 251 n. 10 ("Although federal pleading standards, not

state standards, govern this matter, … the strictness of New York's law reflects the importance

of giving defendants notice of why any alleged statements were defamatory"). Also, while

Plaintiff objects to Defendants' alleged characterization of him as a "stalker," a "harasser," and a

"criminal," among other things, he fails to plead facts that, if proven, would establish the falsity

of these alleged statements. *See Tannerite Sports, LLC*, 864 F.3d at 247 ("Because falsity is an

element of New York's defamation tort, and 'falsity' refers to material not substantially true, the

complaint in this case must plead facts that, if proven, would establish that the defendant's

statements were not substantially true"); *Lanasa v. Stiene*, no. 24-1325, 2025 U.S. App. LEXIS

6775, *10 (2d Cir. March 24, 2025) ("While the Second Amended Complaint asserts in a

conclusory fashion that each listed statement is false, it is devoid of any *facts* supporting the

claim of falsity") (emphasis in original); *Holder v. Bobb*, 24-cv-2362 (KAM), 2025 U.S. Dist.

LEXIS 163790, *27 (E.D.N.Y. Aug. 22, 2025) (dismissing defamation claim because, among

other things, plaintiff failed to adequately plead falsity when she alleged "Plaintiff is an upright

member of society and has never been charged with any crime or accused of extortion"). The

Amended Complaint is devoid of facts supporting Plaintiff's claims of falsity – it simply declares, "The defamatory statements were false," AC ¶ 211 – and, as previously discussed, his fabrication of evidence in the Title IX proceeding indicates that the Complainant's allegations of stalking and harassment were well-founded.

The nature of Plaintiff's allegations makes it impossible to understand who said what, and when. Even when Plaintiff alleges that a specific defendant made a defamatory remark, his pleading falls short. For instance, Plaintiff alleges that the Complainant contacted his former spouse and made "inflammatory statements intended to disrupt Plaintiff's family relationships and emotional stability," AC ¶ 77, yet he fails to allege what specific statements (if any) were defamatory (as opposed to being merely "inflammatory"), and when and how the Complainant made them. Plaintiff also alleges that Taranto's October 31 email was defamatory, but as discussed, she was merely doing her job by internally relaying the Complainant's allegations of harassment and stalking to the school's Title IX Coordinator. He claims that the October 31 email was "circulated beyond … individuals with a legitimate need to know," AC ¶ 199, but the Factual Allegations portion of the pleading, AC ¶¶ 31-117, does not allege that anyone beyond Moran received Taranto's October 31 email. In addition, to the extent Plaintiff seeks to hold any Defendant liable for reporting, recording and investigating the Complainant's allegations that he harassed and stalked her, such legitimate investigatory conduct is privileged. *See*, *e.g.*, *DiCoby v Syracuse Univ.*, 191 A.D.3d 425, 427 (1st Dept. 2021) (letter accusing plaintiff of "unprofessional and inappropriate" conduct was protected by qualified privilege since it was written by his employer in the context of an investigation into workplace conduct); *Scalise v. Herkimer, Fulton, Hamilton & Otsego County BOCES*, 16 A.D.3d 1059, 1060 (4th Dept. 2005) ("defendants' motion was properly granted because the allegedly defamatory statements were

made in the performance of official duties and in good faith and thus are entitled to a qualified privilege"). Finally, to the extent Plaintiff brings a defamation claim against the Complainant for recently reporting his harassing conduct to the New York State Police, such conduct does not constitute defamation and is privileged; nor does plaintiff plead actual malice. *See*, *e.g.*, *Russ v. State Emples. Fed. Credit Union*, 298 A.D.2d 791, 793 (3d Dept. 2002). And again, he fails to allege the specific statements that were defamatory, beyond repeating the same words about himself ("dangerous," "stalker," "harasser," "sexual predator," "criminal") that he implausibly puts in every defendant's mouth over the course of a year. For these reasons, Plaintiff fails to state a defamation claim against any defendant.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted.

Dated:  January 13, 2026

BOND, SCHOENECK & KING, PLLC

By: _____
    Stuart F. Klein, Esq.
    Bar Roll No. 511691
    Michael S. Barnett, Esq.
    Bar Roll No. 519140
    *Attorneys for Defendants*
    22 Corporate Woods Blvd., Suite 501
    Albany, New York  12211
    Telephone:  (518) 533-3000
    Email: sklein@bsk.com; mbarnett@bsk.com

35