UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN DOE,

                         Plaintiff,

v.                                                1:25-cv-01450 (AMN/ML)

ALBANY LAW SCHOOL, et al.,

                         Defendants.
_____

**APPEARANCES:**                                        **OF COUNSEL:**

**JOHN DOE**
1538 Alexander Loop
Mayfield, Kentucky 42066
Plaintiff *pro se*

**BOND, SCHOENECK & KING, PLLC**        **STUART F. KLEIN, ESQ.**
20 Corporate Woods Blvd. – Suite 501          **MICHAEL S. BARNETT, ESQ.**
Albany, New York 12211
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On October 16, 2025, Plaintiff *pro se*, identified by the pseudonym 'John Doe,'[1] commenced this action against Albany Law School, the Albany Law School Rugby Club ("Rugby

---

[1] While Plaintiff identifies himself by full name in his Complaint and initial motion for preliminary injunction, *see* Dkt. Nos. 1, 5, Plaintiff subsequently filed motions to proceed by pseudonym and to seal and redact prior identifying records. Dkt. Nos. 37, 48. On January 14, 2026, following a hearing, Magistrate Judge Lovric denied Plaintiff's motions. Dkt. No. 76. The following day, Plaintiff objected to Magistrate Judge Lovric's order, *see* Dkt. No. 78, and filed a motion to stay the portion of Magistrate Judge Lovric's order which directs the Clerk to add Plaintiff's full name to the public docket. *See* Dkt. No. 79. On January 23, 2026, the Court granted Plaintiff's motion to stay the order pending the Court's review of Plaintiff's objections. Dkt. No. 84.

Club"), Dawn Barker-Floyd, Cinnamon Carlarne, Joan Cook, Grand River Solutions, Inc., Keith Hirokawa, James Lauria, Members of the Albany Law School Board of Trustees ("Board of Trustees"), Jackie Moran, Rosemary Queenan ("Dean Queenan"), Mike Reid, Jenean Taranto ("Dean Taranto"), Michael Wetmore, and Sophia Wilder, alleging that Albany Law School's decision to expel Plaintiff from Albany Law School violated federal and state law. *See* Dkt. No. 1 ("Complaint"). Simultaneously, Plaintiff filed an emergency motion for a preliminary injunction seeking an order that, among other things, requires Defendants to vacate Plaintiff's dismissal and permit him to re-enroll in Albany Law School. Dkt. No. 5 at 1.[2] On October 17, 2025, this Court denied Plaintiff's motion for a preliminary injunction for various procedural deficiencies, including for failure to provide adequate proof of service on all parties in accordance with the Local Rules. *See* Dkt. No. 7. On October 27, 2025, Plaintiff filed an amended motion for a preliminary injunction. Dkt. No. 12 ("Motion"). On December 3, 2025, Defendants filed their Opposition to the Motion, *see* Dkt. No. 33, and on December 8, 2025, Plaintiff filed his Reply. Dkt. No. 40. On December 29, 2025, Plaintiff filed an Amended Complaint, which drops certain of Plaintiff's claims and removes the Rugby Club and Board of Trustees as Defendants. *See* Dkt. No. 54. The Court, in its discretion, decides the Motion based on the Parties' written submissions.

For the reasons set forth herein, the Court denies Plaintiff's Motion.

## II. BACKGROUND[3]

In August 2024, Plaintiff enrolled as a first-year law student at Albany Law School. Dkt. No. 33 at 7; Dkt. No. 33-1 at ¶ 2. Plaintiff alleges that on October 31, 2024, a female law student

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[3] The following facts are taken from the Amended Complaint, as well as the affidavits and other materials submitted in support of Plaintiff's Motion and are assumed true for the limited purpose

2

(the "complainant") met with Dean Taranto, the Associate Dean for Student Affairs at Albany Law School, to discuss concerns about Plaintiff. Dkt. No. 54 at ¶ 36. Plaintiff further alleges that after such discussion, the complainant decided not to file a Title IX complaint against Plaintiff. *Id*. Later that day, Dean Taranto sent an email to Jackie Moran, the Title IX coordinator at Albany Law School, to request that she contact the complainant, explaining that a "1L male student . . . is stalking [the complainant]" and that Plaintiff "has engaged in some very concerning conduct[.]" Dkt. No. 66-1 at 2. In that same email, Dean Taranto also told Ms. Moran that she instructed the complainant to not engage with Plaintiff and to trust Ms. Moran. *Id.* That evening, Plaintiff separately emailed Dean Taranto requesting a meeting to discuss his concerns about the complainant, but Plaintiff cancelled the meeting the following morning on November 1, 2024. Dkt. No. 54 at ¶¶ 42-44.

On November 5, 2024, the complainant filed a Title IX complaint against Plaintiff. *Id.* at ¶ 55; *see also* Dkt. No. 33 at 7 (citing Dkt. No. 33-4 at 2). Plaintiff alleges that Ms. Moran contacted the complainant and encouraged her to file a Title IX complaint against Plaintiff, assuring her that Albany Law School "would support her and protect her 'as a woman' from 'male retaliation.'" Dkt. No. 54 at ¶ 45. Ms. Moran thereafter issued a no-contact order between Plaintiff and the complainant on November 12, 2024. *Id.* at ¶ 57.

On December 2, 2024, Ms. Moran notified Plaintiff of the initiation of Title IX proceedings against him. Dkt. No. 33 at 7 (citing Dkt. No. 33-4 at 2).[4] The following day, on December 3, 2024, Plaintiff emailed Ms. Moran, Dean Taranto, and Dean Queenan a response to the Title IX

---

of deciding Plaintiff's Motion. *See, e.g.*, *Sullivan v. Cossette*, No. 13-cv-621, 2013 WL 3965125, at *1 (D. Conn. Aug. 2, 2013).

[4] Plaintiff contends that he was not notified of the Title IX complaint against him until December 12, 2024. Dkt. No. 54 at ¶ 63.

3

complaint that included text messages and photographs that Plaintiff appeared to have exchanged with the complainant in September and October 2024.  *Id.* (citing Dkt. No. 33-4 at 2, 17-34).  In his email, Plaintiff contended that these text messages and photographs indicated that the complainant consented to flirtatious communications from Plaintiff.  *Id.* at 8 (citing Dkt. No. 33-4 at 2, 17-34).

Thereafter, Vanessa Bentley, an external Title IX investigator employed by Grand River Solutions, was appointed to collect evidence and interview witnesses.  *Id.* (citing Dkt. No. 33-4 at 2).  On December 18, 2024, Ms. Bentley emailed Plaintiff and asked him to submit any relevant materials for her consideration, including any messages, emails, and social media posts related to the complainant's allegations, as well as a video recording of all text message history with the complainant.  *Id.* (citing Dkt. No. 33-4 at 3, 36-37).  On December 20, 2024, Plaintiff replied to Ms. Bentley's email admitting that he had fabricated the text messages between himself and the complainant that he submitted to Ms. Bentley on December 3, 2024, and that he had deleted the actual messages that they had exchanged.  *Id.* at 8-9 (citing Dkt. No. 33-4 at 3, 39-41).

Following Plaintiff's admission and pursuant to the Albany Law School Student Handbook ("ALS Student Handbook"), Dean Taranto initiated an investigation into Plaintiff's fabrication and deletion of evidence, an investigation separate from the Title IX investigation.  *Id.* at 9 (citing Dkt. No. 33-4 at 4); *see also* Dkt. No. 33-2 at 33.  On January 22, 2025, Dean Taranto provided Plaintiff with written notice of the investigation. Dkt. No. 33 at 9 (citing Dkt. No. 33-4 at 4).  In accordance with the ALS Student Handbook, Dean Taranto convened a disciplinary panel (the "Disciplinary Panel" or "Panel") and asked Plaintiff to meet with the Panel prior to a hearing.  *Id.* (citing Dkt. Nos. 33-4 at 5 and 33-2 at 35).  On February 27, 2025, Plaintiff agreed to meet with the Panel and asked whether they had to "go through the whole hearing process," given that Plaintiff "voluntarily

4

told [Dean] Taranto and [Ms. Bentley]" that he "submit[ed] fake messages." *Id.* (citing Dkt. No. 33-4 at 5, 43); *see also* Dkt. No. 33-4 at 43. On March 3, 2025, the Disciplinary Panel met with Plaintiff over Zoom, during which Plaintiff admitted to fabricating and deleting evidence, explaining that he "acted out of stress, panic, and anger," because he was going through a contentious divorce at the time. Dkt. No. 33 at 9-10 (citing Dkt. No. 33-4 at 5-7, 48). Plaintiff also stated that he did not want a hearing, instead requesting that the Disciplinary Panel move forward with determining the appropriate sanction. *Id.* (citing Dkt. No. 33-4 at 5, 50).

In a written decision, dated March 21, 2025, the Disciplinary Panel found that Plaintiff committed misconduct as defined by Chapter X of the ALS Student Handbook by falsifying evidence, and accordingly, Plaintiff should be expelled from Albany Law School. *Id.* at 10 (citing Dkt. No. 33-4 at 7-8); *see also* Dkt. No. 33-4 at 15. In reaching its decision, the Panel considered the mitigating information offered by Plaintiff, namely that he self-reported his misconduct, expressed contrition, and was purportedly under stress. Dkt. No. 33 at 10 (citing Dkt. No. 33-4 at 10-15). But the Disciplinary Panel also noted that Plaintiff came forward only after Ms. Bentley requested a video recording of his text messages with the complainant, over two weeks after he emailed the fabricated evidence. *Id.* at 10-11 (citing Dkt. No. 33-4 at 10-15). That same day, Albany Law School informed Plaintiff via email that he was immediately expelled. *Id.* at 11 (citing Dkt. No. 33-3 at 2); *see also* Dkt. No. 54 at ¶ 91.

According to Plaintiff, in the months following his expulsion, he submitted several requests to Defendants for reconsideration, reinstatement, and access to records. Dkt. No. 54 at ¶ 100. On October 1, 2025, Albany Law School informed Plaintiff that the Title IX complaint against him was dismissed pursuant to institutional discretion. *Id.* at ¶¶ 102, 104.

On October 16, 2025, Plaintiff commenced this action by filing a Complaint and a motion

5

for preliminary injunction.  *See* Dkt. Nos. 1, 5.  In his Motion, Plaintiff seeks an order requiring Defendants to (i) vacate Plaintiff's dismissal from Albany Law School; (ii) permit Plaintiff to re-enroll in Albany Law School on a conditional and monitored basis and restore his former scholarship; (iii) seal disciplinary and Title IX records pending adjudication and refrain from reopening any Title IX case; (iv) cease any ongoing disclosures or enforcement related to the disputed proceedings; and (v) refrain from retaliatory or discriminatory conduct under Title IX and the Americans with Disabilities Act ("ADA").  Dkt. No. 12 at 1.

**III.    STANDARD OF REVIEW**

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion."  *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).  "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citations omitted).  Further, a preliminary injunction is "never awarded as of right," *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 200 (N.D.N.Y. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), and the decision to grant such relief "rests in the sound discretion of the district court[.]"  *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).  The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a

legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

A party seeking preliminary injunctive relief must establish: "(1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal quotation marks and citation omitted). However, in certain circumstances, a plaintiff seeking a preliminary injunction must satisfy a heightened standard. The heightened standard applies when either "[i] the movant is seeking to modify the status quo by virtue of a *mandatory* preliminary injunction (as opposed to seeking a *prohibitory* preliminary injunction to maintain the status quo), or [ii] where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits[.]" *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020) (internal quotation marks omitted) (emphasis in original); *see also N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 n.5 (2d Cir. 2018) (noting that "the 'status quo' in preliminary-injunction parlance is really a 'status quo ante'" (quoting *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983))).

Here, Plaintiff's preliminary injunction seeks to "alter rather than maintain the status quo" by commanding some positive act, namely, by vacating Plaintiff's dismissal from Albany Law School, reinstating him on a conditional and monitored basis, and restoring his scholarship. *See* Dkt. No. 12 at 1; *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *see also Barsoumian v. Williams*, 29 F. Supp. 3d 303, 319 (W.D.N.Y. 2014) (applying

heightened standard to preliminary injunction that requested reinstatement to residency position in medical school's residency program), *aff'd sub nom. Barsoumian v. Univ. at Buffalo*, 594 F. App'x 41 (2d Cir. 2015). Accordingly, under the heightened standard, a preliminary injunction may only be granted upon (i) a strong showing of irreparable harm, and (ii) a showing of a clear or substantial likelihood of success on the merits. *See JTH Tax, LLC v. Agnant*, 62 F.4th 658, 669 (2d Cir. 2023) (citation omitted); *see also Faus on behalf of E.F. v. Indian River Cent. Sch. Dist.*, No. 25-cv-453, 2025 WL 2490438, at *4 (N.D.N.Y. Aug. 29, 2025) (quoting *Yang*, 960 F.3d at 128).

## IV.  DISCUSSION

As a preliminary matter, Defendants argue that Plaintiff's requests that the Defendants (i) "seal [Plaintiff's] disciplinary and Title IX records pending adjudication and refrain from reopening any Title IX case"; (ii) cease "any ongoing disclosures or enforcement related to the disputed proceedings"; and (iii) refrain "from retaliatory or discriminatory conduct under Title IX or the [ADA]" are unsupported by the record. Dkt. No. 33 at 13-14. The Court agrees. According to Plaintiff, Albany Law School dismissed the Title IX complaint against Plaintiff prior to a final disposition on the merits. *See* Dkt. No. 54 at ¶¶ 102, 104. Thus, it appears that there is no pending adjudication, ongoing disclosure, or further enforcement related to the Title IX complaint, nor is there any indication that any of the Defendants are seeking to reopen the complaint or will do so in the foreseeable future.[5] Additionally, given that Plaintiff is not a current law student at Albany Law School, Defendants appear to be unable to engage in discriminatory or retaliatory conduct against Plaintiff presently or in the foreseeable future. Accordingly, the Court considers only

---

[5] To the extent that Plaintiff also requests that Defendants "cease any ongoing disclosures or enforcement" related to his disciplinary proceedings, those proceedings have concluded, *see* Dkt. No. 33 at 10, and there is no indication that Defendants are engaging in ongoing enforcement or disclosure related to those proceedings.

Plaintiff's first two requests: (1) vacating his dismissal from Albany Law School; and (2) permitting him to re-enroll in Albany Law School on a conditional and monitored basis with his former scholarship.[6]

After a close review of the Amended Complaint, the Motion, and the related submissions, the Court finds that Plaintiff has not met his burden to establish that a preliminary injunction is warranted.

### A. Strong Showing of Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction[.]" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks and citation omitted). The Second Circuit defines irreparable harm as "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co., LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003) (citations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (noting that "[i]rreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation") (internal quotation marks and citations omitted). Additionally, the irreparable harm must be preventable by the injunction, *i.e.*, Plaintiff must show that he will be irreparably harmed if the Court does not grant the requested preliminary injunction. *See Doe v. Quinnipiac Univ.*, No. 17-cv-364, 2017 WL 1206002, at *5 (D. Conn. Mar. 31, 2017) (citations omitted). Here, Plaintiff identifies four harms

---

[6] To the extent that Plaintiff seeks to raise any new requests for relief in his Reply, the Court declines to address those requests. *See* Dkt. No. 40 at 22-23 (requesting, *inter alia*, the "[r]estoration of Plaintiff's transcript, enrollment, and systems access"; the "[p]roduction of all Title IX and disciplinary records previously withheld or delayed"; and a "[p]rohibition on retaliation against Plaintiff for pursuing this litigation"); *see also Doe v. Holy Bagel Café II, Inc.*, No. 15-cv-3620, 2021 WL 4463025, at *7 (E.D.N.Y. Sept. 29, 2021) ("Reply papers are not the proper place for new arguments or requests for relief." (citations omitted)).

that he contends are irreparable absent the issuance of a preliminary injunction and are not compensable by monetary damages alone: (i) bar admission ineligibility; (ii) loss of professional opportunities; (iii) mental health injury; and (iv) loss of reputation and stigma. Dkt. No. 12 at 3.

As an initial matter, Defendants contend that Plaintiff's delay in seeking a preliminary injunction undermines any assertion of irreparable harm. Dkt. No. 33 at 22-23. The Court agrees. "The Second Circuit has explained that a party's failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Doe v. Zucker*, 496 F. Supp. 3d 744, 753 n.6 (N.D.N.Y. 2020) (quoting *Citibank N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985)) (internal quotation marks omitted); *see also M.V. Music v. V.P. Recs. Retail Outlet, Inc.*, 653 F. Supp. 3d 31, 40 (E.D.N.Y. 2023) (noting that "months-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit" to undermine the justification of preliminary injunctions, which is the need for swift action to protect a plaintiff's rights) (citation omitted)). Here, Plaintiff moved for a preliminary injunction approximately seven months after Plaintiff was dismissed from Albany Law School. Plaintiff offers no explanation for his delay in seeking preliminary injunctive relief. Accordingly, the Court finds that Plaintiff's significant delay in seeking redress weighs against a finding of irreparable harm. *See, e.g.*, *Montague v. Yale Univ.*, No. 16-cv-885, 2017 WL 4942772, at *4 (D. Conn. March 8, 2017) (finding that plaintiff's "own delay suggests that he was not facing irreparable harm that required immediate action to remedy an imminent and non-speculative harm, but a harm that could be remedied upon a final adjudication of the merits").

Moreover, Plaintiff's purported irreparable harm stemming from bar admission ineligibility and loss of professional opportunities is too speculative to be irreparable. Plaintiff was expelled after completing one semester at Albany Law School. Any delay in receiving further

10

law school education, enrolling in other graduate education, or pursuing professional opportunities is too speculative to demonstrate irreparable harm. *See Caiola v. Saddlemire*, No. 12-cv-624, 2013 WL 1310002, at *2 (D. Conn. Mar. 27, 2013) (finding that the stigma of plaintiff's expulsion interfering with his academic and professional career was too speculative to constitute irreparable harm); *see also Doe v. Vassar Coll.*, No. 19-cv-9601, 2019 WL 6222918, at *6 (S.D.N.Y. Nov. 21, 2019) (noting that "the mere fact that [p]laintiff might have to explain a gap in his studies does not automatically result in a finding of irreparable harm"); c*f. Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (holding that damage to professional reputation does not constitute irreparable harm in employment termination cases); *Rignol v. Yale Univ.*, No. 25-cv-159, 2025 WL 1295604, at *10 (D. Conn. May 5, 2025) (explaining that "courts have not found irreparable harm when a suspended student is unable to identify specific career prospects or educational plans that would be forfeited by serving a suspension," and collecting cases).

Furthermore, Plaintiff's conclusory assertions of loss to reputation and stigma are insufficient to demonstrate a strong showing of irreparable harm. *See Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-cv-3314, 2015 WL 4033019, at *11 (S.D.N.Y. June 29, 2015) (holding that "conclusory statements of loss of reputation will not justify an irreparable harm finding"); *cf. Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992) (finding that injuries that generally stem from a discharge of employment, including loss of reputation, "do not constitute the irreparable harm necessary to obtain a preliminary injunction" (citing *Sampson*, 415 U.S. at 89-92)). Here, Plaintiff summarily claims that he will suffer irreparable harm from a "[l]oss of reputation and stigma from unsealed, unresolved allegations." Dkt. No. 12 at 3. Plaintiff offers "only broad allegations concerning [his] potential loss of reputation[.]" *See TVC Albany, Inc. v. Am. Energy Care, Inc.*, No. 12-cv-1471, 2012 WL

5830705, at *6 (N.D.N.Y. Nov. 16, 2012). Accordingly, Plaintiff has not shown a likelihood, let alone a strong showing, of irreparable harm from his alleged reputational loss.

Additionally, the purported harm to Plaintiff's mental health is insufficient to demonstrate a strong showing of irreparable injury. Plaintiff alleges in his Amended Complaint that he suffers from acute anxiety, panic disorder, and stress, and that these conditions substantially limit his ability to concentrate, sleep, regulate his emotions, and function under high academic pressure. Dkt. No. 54 at ¶ 145. Indeed, Plaintiff alleges that his dismissal from Albany Law School "caused an acute mental-health crisis culminating in a suicide attempt." *Id.* at ¶ 95. However, it is unclear—and Plaintiff fails to explain—how such conditions would be repaired through the vacation of his dismissal from Albany Law School and his reenrollment in the school. *See, e.g.*, *Philippeaux v. Bd. of Correction of Naval Recs.*, No. 24-cv-8732, 2025 WL 1089392, at *1 (S.D.N.Y. Mar. 26, 2025) (finding that plaintiff failed to demonstrate a likelihood of irreparable harm where plaintiff's purported depression and mental health deterioration were "the immediate result of his discharge" from the U.S. Air Force). Plaintiff also does not contend that his mental health conditions have worsened or that they are likely to worsen if the requested relief is not granted. Therefore, Plaintiff fails to show that the harm to his mental health is ongoing in a manner that can be addressed by the relief he seeks, or that the harm Plaintiff has already suffered cannot be remedied by a monetary award. *See Lore v. City of Syracuse*, No. 00-cv-1833, 2001 WL 263051, at *5 (N.D.N.Y. Mar. 9, 2001) (concluding that plaintiff's emotional harm, while serious, does not constitute irreparable harm because "plaintiff has not shown that her emotional harm cannot be compensated through a monetary award"). Accordingly, Plaintiff has not shown a likelihood, let alone a strong showing, of irreparable harm from his alleged mental health injuries.

More broadly, if Plaintiff were to prevail on the merits of his underlying claims and reenroll

in Albany Law School, in addition to seeking compensation for his psychological harm, Plaintiff could also seek monetary compensation for the delay in his education. *See Montague*, 2017 WL 4942772 at *4; *see also Madej v. Yale Univ.*, No. 20-cv-133, 2020 WL 1614230, at *6-7 (D. Conn. Mar. 31, 2020) (finding that any delay in plaintiff's graduation could be remedied through monetary compensation); *Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982) ("We can conceive of no irreparable harm that would accrue to [plaintiff] in allowing her graduation to await the outcome of the trial on the merits; any damages . . . would surely be compensable by monetary damages.").

Accordingly, the Court finds that Plaintiff has failed to make a strong showing of irreparable harm in the absence of a preliminary injunction.

\* \* \*

Because a "finding of no showing of irreparable harm is dispositive," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 68 (2d Cir. 2007), the Court need not address the remaining factors, including whether Plaintiff is likely to succeed on the merits of his claims. *See, e.g.*, *Harley Marine NY, Inc. v. Moore*, No. 23-cv-163, 2023 WL 3620720, at *9 (N.D.N.Y. Mar. 24, 2023) (declining to address the remaining elements necessary to obtain injunctive relief where the plaintiff failed to demonstrate the probability of irreparable harm); *see also JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 36 (2d Cir. 2015) ("Because irreparable harm is the '*sine qua non* for preliminary injunctive relief,' we conclude that [plaintiff's] motion for a preliminary injunction fails at the irreparable harm stage, and we do not reach the other components of the preliminary injunction inquiry." (citation omitted)).

Accordingly, given that Plaintiff has failed to establish a strong showing of irreparable harm, Plaintiff's Motion is denied.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for a Preliminary Injunction, Dkt. No. 12, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 30, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge