UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AUSTIN ROY CLARK,

                Plaintiff,

v.                                      1:25-cv-01450 (AMN/ML)

ALBANY LAW SCHOOL, *et al.*,

                Defendants.

---

APPEARANCES:                             OF COUNSEL:

**AUSTIN ROY CLARK**
1538 Alexander Loop
Mayfield, Kentucky 42066
Plaintiff *pro se*

**BOND, SCHOENECK & KING, PLLC**        **STUART F. KLEIN, ESQ.**
20 Corporate Woods Blvd. – Suite 501       **MICHAEL S. BARNETT, ESQ.**
Albany, New York 12211
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.     INTRODUCTION

On October 16, 2025, Plaintiff *pro se* Austin Roy Clark[1] commenced this action against

Albany Law School, the Albany Law School Rugby Club ("Rugby Club"), Dawn Barker-Floyd,

---

[1] On December 8, 2025, Plaintiff separately moved to proceed via pseudonym, *see* Dkt. No. 37, and on December 18, 2025, moved to seal and redact the previously submitted records that identify his full name. Dkt. No. 48. Magistrate Judge Lovric denied both motions on January 14, 2026. Dkt. No. 76; *see also* Dkt. No. 91. The following day, Plaintiff appealed Magistrate Judge Lovric's order and filed a motion to stay the portion of the order that directs the Clerk to add Plaintiff's full name to the docket. Dkt. Nos. 78, 79. The Court denied Plaintiff's appeal and motion to stay on August 12, 2026. Dkt. No. 106. Accordingly, Plaintiff is identified by his full name herein, which reflects the current case caption.

Cinnamon Carlarne, Joan Cook, Grand River Solutions, Inc. ("Grand River Solutions"), Keith Hirokawa, James Lauria, Members of the Albany Law School Board of Trustees ("Board of Trustees"), Jackie Moran, Rosemary Queenan ("Dean Queenan"), Mike Reid, Jenean Taranto ("Dean Taranto"), Michael Wetmore, and Sophia Wilder alleging that the decision to expel Plaintiff from Albany Law School violated federal and state law.  *See* Dkt. No. 1 ("Complaint"). On December 29, 2025, Plaintiff amended his complaint to drop certain of Plaintiff's claims and remove the Rugby Club and Board of Trustees as Defendants.  *See* Dkt. No. 54 ("Amended Complaint").  Presently before this Court is Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted.  Dkt. No. 73 (the "Motion").

For the reasons set forth below, the Motion is granted.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record. *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties

Plaintiff is a former student at Albany Law School who was enrolled in the Juris Doctor program during the Fall 2024 and Spring 2025 semesters.  *See* Dkt. No. 54 at ¶¶ 17, 31.  Plaintiff currently resides in Kentucky.  *Id.* at ¶ 17.

Albany Law School is a private educational institution located in Albany, New York that receives federal funding.  *Id.* at ¶ 18.  Grand River Solutions is a private company based in

California that Albany Law School contracted to manage its Title IX investigations and compliance processes. *Id.* at ¶ 19.

Cinnamon Carlarne is the current President and Dean of Albany Law School, *see id.* at ¶ 20, and Dean Taranto and Dean Queenan are the Associate Deans of Student Affairs and Academic Affairs at Albany Law School, respectively. *Id.* at ¶¶ 21-22. Dawn Barker-Floyd and Joan Cook are the Acting Title IX Director and Acting Deputy Title IX Director at Albany Law School, respectively. *Id.* at ¶¶ 23-24. Both are also employees of Grand River Solutions. *Id.* Jackie Moran is the former Title IX Director at Albany Law School and was also an employee of Grand River Solutions. *Id.* at ¶ 25. Keith Hirokawa and Michael Wetmore are law professors at Albany Law School who served on the disciplinary panel that was responsible for evaluating Plaintiff's conduct. *Id.* at ¶¶ 26-27.

Sophia Wilder is the complainant in the Title IX proceeding against Plaintiff, and a current law student at Albany Law School at the time the Amended Complaint was filed. *Id.* at ¶ 28. Mike Reid and James Lauria are the former President and former Team Captain of the Rugby Club at Albany Law School, respectively. *Id.* at ¶¶ 29-30. Both are also former students at Albany Law School. *Id.*

Each of the individual Defendants is sued in his or her individual capacity. *Id.* at ¶¶ 20-30.

**B. The Amended Complaint**

Plaintiff alleges that on October 31, 2024, Ms. Wilder met with Dean Taranto to discuss her concerns about Plaintiff. *Id.* at ¶ 36. Plaintiff further alleges that, at that time, Ms. Wilder indicated that she did not wish to file a Title IX complaint against Plaintiff and preferred to resolve

the matter informally. *Id.*; *see also* Dkt. No. 54-1 at 1.[2] Later that day, Dean Taranto sent an email to Ms. Moran to request that she contact Ms. Wilder, explaining that a "1L male student . . . is stalking [her]" and that Plaintiff "has engaged in some very concerning conduct[.]" Dkt. No. 73-2 at 2. In that same email, Dean Taranto also told Ms. Moran that she instructed Ms. Wilder "not to engage [Plaintiff] and to trust [Ms. Moran]." *Id.* That evening, Plaintiff separately emailed Dean Taranto and requested a meeting to discuss his concerns about Ms. Wilder, but Plaintiff cancelled the meeting the following morning on November 1, 2024. Dkt. No. 54 at ¶¶ 42-44.

On November 5, 2024, Ms. Wilder filed a Title IX complaint against Plaintiff. *Id.* at ¶ 55. Plaintiff alleges that Ms. Moran contacted Ms. Wilder and encouraged her to file a Title IX complaint against Plaintiff, assuring her that Albany Law School "would support her and protect her 'as a woman' from 'male retaliation.'" *Id.* at ¶ 45. Ms. Moran thereafter issued a no-contact order between Plaintiff and Ms. Wilder on November 12, 2024. *Id.* at ¶ 57. In her email to Plaintiff issuing the no-contact order, Ms. Moran reminded Plaintiff that Albany Law School "expect[s] that [Plaintiff] will comport with the Law School's policies moving forward and not engage in any behaviors that might constitute prohibited misconduct." Dkt. No. 73-3 at 2. Plaintiff alleges that he objected to the language in Ms. Moran's email, characterizing it as prejudicial, and requested assurances that his Title IX due process rights would be respected. Dkt. No. 54 at ¶ 50. According to Plaintiff, no such assurances were provided. *Id.* Plaintiff further alleges that he requested "reasonable accommodations to prevent further escalation and address [his] mental-health symptoms," and that Ms. Moran either delayed responding or failed to respond. *Id.* at ¶ 51. Instead, Plaintiff alleges that on November 23, 2024, Ms. Moran assisted Ms. Wilder with

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

formulating her allegations and structuring her complaint, but did not provide comparable assistance to Plaintiff for his defense. *Id.* at ¶¶ 60-62. Plaintiff also alleges that he sought a "fair resolution" of the Title IX complaint from Dean Queenan, who told Plaintiff that Ms. Wilder was "obviously raising these concerns for a reason." *Id.* at ¶ 52.

On December 2, 2024, Ms. Moran notified Plaintiff of the initiation of Title IX proceedings against him. *See* Dkt. No. 33-4 at 2.[3] The following day, on December 3, 2024, Plaintiff emailed Ms. Moran, Dean Taranto, and Dean Queenan a response to the Title IX complaint that included text messages and photographs that Plaintiff appeared to have exchanged with Ms. Wilder in September and October 2024. *Id.* at 2, 17-34. In his email, Plaintiff contended that these text messages and photographs indicated that Ms. Wilder consented to flirtatious communications from Plaintiff. *Id.* at 2.

Thereafter, Vanessa Bentley, an external Title IX investigator employed by Grand River Solutions, was appointed to collect evidence and interview witnesses. *Id.* On December 18, 2024, Ms. Bentley emailed Plaintiff and asked him to submit any relevant materials for her consideration, including any messages, emails, and social media posts related to Ms. Wilder's allegations, as well as a video recording of all text message history with Ms. Wilder. *Id.* at 2-3, 36-37. On December 20, 2024, Plaintiff replied to Ms. Bentley's email admitting that he had fabricated the text messages between himself and Ms. Wilder that he submitted on December 3, 2024, and that he had deleted the actual messages that they had exchanged. *Id.* at 3-4, 39-41. Plaintiff alleges that he voluntarily disclosed this fabrication of text messages between himself and Ms. Wilder "with complete transparency and genuine remorse." Dkt. No. 54 at ¶¶ 68-69. According to Plaintiff, Ms. Moran

---

[3] Plaintiff contends that he was not notified of the Title IX complaint against him until December 12, 2024. Dkt. No. 54 at ¶ 63.

then escalated the matter to Dean Taranto.  *Id.* at ¶ 70.[4]

Following Plaintiff's admission and pursuant to the Albany Law School Student Handbook ("ALS Student Handbook"), Dean Taranto initiated an investigation into Plaintiff's fabrication and deletion of evidence, an investigation separate from the Title IX investigation.  *Id.* at ¶ 74; *see also* Dkt. No. 33-4 at 4.  On January 22, 2025, Dean Taranto provided Plaintiff with written notice of the investigation.  Dkt. No. 33-4 at 4.[5]

In accordance with the ALS Student Handbook, Dean Taranto convened a disciplinary panel (the "Disciplinary Panel" or "Panel")[6] and asked Plaintiff to meet with the Panel prior to a hearing.  Dkt. Nos. 33-4 at 5.  On February 27, 2025, Plaintiff agreed to meet with the Panel and asked whether they had to "go through the whole hearing process," given that Plaintiff "voluntarily told [Dean] Taranto and [Ms. Bentley]" that he "submit[ted] fake messages."  *Id.* at 5, 43.  On March 3, 2025, the Disciplinary Panel met with Plaintiff over Zoom, and during that meeting Plaintiff admitted to fabricating and deleting evidence, explaining that he acted out of stress, panic, and anger because he was going through a contentious divorce at the time.  *Id.* at 5-7, 48.  Plaintiff

---

[4] According to Plaintiff, Dean Taranto met with Plaintiff in January 2025 to discuss this fabrication issue and allegedly told Plaintiff that she anticipated resolving the matter "through a written reprimand and minor consequences."  Dkt. No. 54 at ¶¶ 71-72.

[5] Separately, around February 2025, Defendants Lauria and Reid "terminated" Plaintiff from Albany Law School's Rugby Club in order to "uphold standards," after they allegedly became aware of the pending Title IX complaint against Plaintiff.  Dkt. No. 54 at ¶ 80.  Plaintiff reported this termination to Ms. Moran, who refused to intervene.  *Id.* at ¶ 81.  Plaintiff further alleges that during the Spring 2025 semester, Defendants Lauria and Reid published messages to Albany Law Rugby Club members that described Plaintiff as "disturbing," "a stalker," "a harasser," and "a criminal," and verbally communicated the same to Rugby Club members and other students.  *Id.* at ¶¶ 83-84.

[6] Plaintiff further alleges that Defendants Wetmore and Hirokawa, who served on the Disciplinary Panel, were pre-selected by Dean Taranto and held a pre-existing bias against male respondents in Title IX matters because they endorsed beliefs that female complainants are "inherently more credible," male respondents "pose inherent risk," and institutions must "avoid leniency to protect women."  Dkt. No. 54 at ¶¶ 85-87.

also stated that he did not want a hearing, instead requesting that the Disciplinary Panel move forward with determining the appropriate sanction. *Id.* at 5.

In a written decision, dated March 21, 2025, the Disciplinary Panel found that Plaintiff committed misconduct as defined by Chapter X of the ALS Student Handbook by falsifying evidence, and accordingly, Plaintiff should be expelled from Albany Law School. *Id.* at 7-8, 15. In reaching its decision, the Panel considered the mitigating information offered by Plaintiff, namely that he self-reported his misconduct, expressed contrition, and was purportedly under stress. *Id.* at 10-15. But the Disciplinary Panel also noted that Plaintiff came forward only after Ms. Bentley requested a video recording of his text messages with the complainant, over two weeks after he emailed the fabricated evidence. *Id.* That same day, Plaintiff received an email at 9:30 p.m. from Defendants Wetmore and Hirokawa notifying him that he was immediately expelled and his institutional accounts were simultaneously deactivated. Dkt. No. 54 at ¶¶ 91-92. This notification caused Plaintiff severe psychological distress, culminating in a suicide attempt. *Id.* at ¶ 95.

According to Plaintiff, the manner and timing of his expulsion was calculated to prevent any response, appeal, or external review. *Id.* at ¶ 93. In the months following his expulsion, Plaintiff submitted several requests to Defendants for reconsideration, reinstatement, and access to records. *Id.* at ¶ 100. On October 1, 2025, Albany Law School informed Plaintiff that the Title IX complaint against him was dismissed pursuant to institutional discretion. *Id.* at ¶¶ 102, 104.

Additionally, after Plaintiff commenced this litigation, Ms. Wilder purportedly initiated a formal harassment complaint with the New York State Police in November 2025. *Id.* at ¶ 107. Plaintiff alleges that this harassment complaint constitutes retaliation, as it was made in bad faith and in direct response to Plaintiff's commencement of this litigation. *Id.* at ¶ 110.

### C. Procedural History

Plaintiff commenced this action on October 16, 2025 with the filing of a complaint and motion for a preliminary injunction. Dkt. Nos. 1, 5. On October 17, 2025, this Court denied Plaintiff's motion for a preliminary injunction as a result of various procedural deficiencies, *see* Dkt. No. 7, and on October 27, 2025, Plaintiff filed an amended motion for a preliminary injunction, *see* Dkt. No. 12, which this Court denied. Dkt. No. 87. On December 29, 2025, Plaintiff filed an Amended Complaint which raises sex discrimination and retaliation claims under Title IX, a disability discrimination claim under the Rehabilitation Act, and state law claims for breach of implied contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, gross negligence, and defamation. *See generally* Dkt. No. 54. On January 13, 2026, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. No. 73. Plaintiff opposed the Motion on January 21, 2026, *see* Dkt. No. 82, and Defendants replied in further support of the Motion on February 9, 2026. Dkt. No. 96.

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to

relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## IV.    DISCUSSION

### A. Defendants' Exhibits

As an initial matter, the Court must decide whether it may consider the two exhibits that Defendants filed in support of their Motion. Specifically, Defendants filed a copy of the October 31, 2024 email Dean Taranto sent to Ms. Moran and a copy of Ms. Moran's November 12, 2024 email and attached no-contact order, neither of which Plaintiff attached to his Amended Complaint. *See* Dkt. Nos. 73-2, 73-3. Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, "the court may consider matters of which judicial notice may be taken, any statements or documents incorporated in the complaint by reference, or any document that is not attached or incorporated by reference 'where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'" *Lipkin v. George*, No. 23-cv-127, 2024 WL 1119958, at *4 (D. Conn. Mar. 14, 2024) (quoting *Chambers v.*

9

*Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "These documents must be 'integral' to the complaint, known to the plaintiff, and not challenged as to their authenticity, accuracy, or relevance." *Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 489 (S.D.N.Y. 2023) (citing *Donoghue v. Gad*, No. 21-cv-7182, 2022 WL 3156181, at *3 (S.D.N.Y. Aug. 8, 2022)).

Here, Plaintiff relies heavily upon the content of these emails throughout his Amended Complaint to support his sex discrimination and retaliation claims, *see* Dkt. No. 54 at ¶¶ 5, 37-41, 44-45, 49-50, 54-55, 57-59, 72, 75, 82, 85, 113-115, 133, 136, 162, 174, 198, and neither party disputes their authenticity, accuracy, or relevance. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (noting that even if a document is integral to the complaint, it must also be clear on the record that "no dispute exists regarding the authenticity or accuracy of the document," and that "no material disputed issues of fact [exist] regarding the relevance of the document"). Accordingly, the Court may consider these emails in deciding Defendants' Motion under Rule 12(b)(6).

Additionally, in opposition to Plaintiff's motion for a preliminary injunction, Defendants filed a copy of the Disciplinary Panel's decision, which Plaintiff also did not attach to his Amended Complaint. *See* Dkt. No. 33-4. Such an omission is often strategic, "because the document, read in its entirety, would undermine the legitimacy of [P]laintiff's claim." *Bergesen v. Manhattanville Coll.*, No. 20-cv-3689, 2021 WL 3115170, at *2 (S.D.N.Y. July 20, 2021) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). But a plaintiff cannot "evade a properly argued motion to dismiss simply because [he] has chosen not to attach [a document] to the complaint or to incorporate it by reference." *I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *see also L-7 Designs, Inc. v. Old Navy*

10

*LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (noting that "failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion").

Here, the Court likewise finds that the Disciplinary Panel's decision is integral to Plaintiff's allegations in the Amended Complaint, notwithstanding Plaintiff's failure to cite or attach the Panel's decision, because it sets forth the factual findings underlying Plaintiff's expulsion, including the Disciplinary Panel's determination that Plaintiff engaged in misconduct—namely, the fabrication of evidence. *See, e.g.*, *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 191, 191 n.1 (W.D.N.Y. 2013) (considering the university's written decision to expel the plaintiff, along with various other documents, because it was "integral to understanding the underlying administrative proceeding[,] which [plaintiff] maintain[ed] was arbitrary and capricious"); *Anand v. New York State Dep't of Tax'n & Fin.*, No. 10-cv-5142, 2012 WL 2357720, at \*2 n.2 (E.D.N.Y. June 18, 2012) (finding the arbitrator's decision integral to the complaint "because it elucidates the nature of the allegations and disciplinary proceedings against plaintiff"). Plaintiff also had knowledge of the Disciplinary Panel's decision, as it was included in Defendants' opposition to Plaintiff's preliminary injunction motion, which was filed before the instant Motion, and the record evidence reflects that Plaintiff received a copy of the Disciplinary Panel's decision via email. *See* Dkt. No. 33-3; *see, e.g.*, *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (permitting consideration of extraneous exhibits in a motion to dismiss where the plaintiffs "did not lack notice of those documents" and the documents were integral to plaintiffs' complaint). Plaintiff again does not dispute the authenticity, accuracy, or relevance of the Disciplinary Panel's decision. Considering the Panel's decision here "vindicates the exact purpose for which the

11

Second Circuit has authorized district courts to consider documents integral to a complaint but not provided by the plaintiff: to 'prevent plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.'" *Dale v. L'Oreal USA, Inc.*, No. 22-cv-427, 2023 WL 3984345, at *3 (E.D.N.Y. June 13, 2023) (quoting *Global Network Commc'ns*, 458 F.3d at 157). Accordingly, the Court may consider the Disciplinary Panel's decision in deciding Defendants' Motion under Rule 12(b)(6).

### B. Title IX Claims

The Court begins by analyzing Plaintiff's Title IX sex discrimination and retaliation claims against Albany Law School. *See* Dkt. No. 54 at ¶¶ 118-143.[7]

### 1. Sex Discrimination

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Of particular relevance here, Title IX "bar[s] the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 413 (N.D.N.Y. 2019) (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016)). Title IX claims that challenge disciplinary proceedings on the grounds of sex discrimination generally proceed on a theory of (i) erroneous outcome, (ii) selective enforcement, or both. *See Roe v. St. John's Univ.*, 91 F.4th 643, 652 (2d Cir. 2024).

Here, Plaintiff proceeds under the theory of selective enforcement, which is based on the premise that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the

---

[7] "Title VII and Title IX are governed by the same substantive standards for reviewing claims of harassment and retaliation." *Summa v. Hofstra Univ.*, 708 F.3d 115, 131 (2d Cir. 2013) (citing *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995)).

decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). To prevail under a theory of selective enforcement, Plaintiff must "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015) (citation omitted). In other words, to show that Albany Law School's actions against Plaintiff were motivated by his gender, Plaintiff must show that "a similarly situated woman would not have been subjected to the same disciplinary proceedings" as Plaintiff. *Id.* (citation omitted). Thus, to survive a motion to dismiss, Plaintiff must have alleged that (i) at least one similarly situated female student at Albany Law School was treated differently during an investigation and Title IX disciplinary proceedings; and (ii) Albany Law School had the requisite discriminatory intent. *See Doe v. New York Univ.*, 438 F. Supp. 3d 172, 181 (S.D.N.Y. 2020); *see also Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 465 (S.D.N.Y. 2021) ("In order to state a selective enforcement claim, a plaintiff must allege that a school treated similarly situated members of the opposite sex—that is, members of the opposite sex facing comparable disciplinary charges— differently and plead specific facts that support a minimal plausible inference of discrimination." (internal quotation marks, citation, and alterations omitted)).

Defendants argue that Plaintiff fails to plead specific facts supporting a minimally plausible inference of gender discrimination by selective enforcement. *See* Dkt. No. 73-4 at 19-24. Specifically, Defendants contend that Plaintiff does not allege how Albany Law School's disciplinary process was biased against men, i.e., how a similarly situated female was treated differently than Plaintiff. *See id.* Plaintiff does not respond to Defendants' argument in his opposition papers. *See generally* Dkt. No. 82.

Plaintiff must allege "a 'meaningful inconsistency' in the way the comparators are

13

treated." *Doe v. Rensselaer Polytechnic Inst.*, No. 19-cv-719, 2019 WL 13472598, at *9 (N.D.N.Y. Aug. 21, 2019) (quoting *Prasad v. Cornell Univ.*, No. 15-cv-322, 2016 WL 3212079, at *18 (N.D.N.Y. Feb. 24, 2016)).  Specifically, in the disciplinary context, Plaintiff must allege that "the school treated . . . members of the opposite sex facing comparable disciplinary charges . . . differently." *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 403-04 (W.D.N.Y. 2017) (citing *Yusuf*, 35 F.3d at 715).

Here, Plaintiff alleges, upon information and belief, that at least one female student during the academic years of 2023 to 2025 was "accused of academic dishonesty involving altered submissions" and was subsequently "sanctioned with probation" instead of being expelled.  Dkt. No. 54 at ¶ 138.  However, Plaintiff does not explain the nature or the extent of the female student's "altered submissions," or provide any other details indicating whether the female student was similarly the subject of a Title IX investigation, or similarly failed to promptly disclose such misconduct.  Without more, the Court cannot evaluate whether this female student is a proper comparator sufficient to support a Title IX selective enforcement claim.  Courts in this Circuit have consistently dismissed selective enforcement claims that fail to identify a similarly situated member of the opposite sex who engaged in comparable conduct and yet was treated differently by the school.  *See, e.g.*, *Doe v. N.Y. Univ.*, 438 F. Supp. 3d 172, 182 (S.D.N.Y. 2020) (dismissing selective enforcement claim where plaintiff "fail[ed] to identify a single instance in which [the university] treated a similarly situated female differently than it treated [p]laintiff"); *Doe v. Syracuse Univ.*, No. 22-cv-644, 2023 WL 4105481, at *12 (N.D.N.Y. June 21, 2023) (dismissing selective enforcement claim where plaintiff failed to allege that "the University refused to undertake investigations of female classmates accused of conduct similar to his"); *Prasad*, 2016 WL 3212079, at *18 (dismissing selective enforcement claim where plaintiff "failed to allege

factual support for the proposition that female students who were accused of sexual misconduct at Cornell were treated more favorably than male students under similar circumstances"); *Yusuf*, 35 F.3d at 715-16 (affirming dismissal of selective enforcement claim where plaintiff failed to allege that the disparate treatment of another accused student was based on similar disciplinary charges).

For these reasons, Plaintiff fails to adequately allege that he and the alleged female student were similarly situated.   Failure to satisfy the first element is "fatal" to Plaintiff's selective enforcement claim under Title IX; therefore, "dismissal can be predicated on this reasoning alone[.]" *New York Univ.*, 438 F. Supp. 3d at 183.  Accordingly, the Court dismisses Plaintiff's sex discrimination claim.

### 2. Retaliation

To state a claim of retaliation under Title IX, "a plaintiff . . . must first establish a *prima facie* case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011).  "Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions."  *Id.* at 92 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Then, the burden shifts back to the plaintiff to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for [retaliation]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  "[A]t the pleading stage, a plaintiff need not plead facts giving plausible support to the ultimate question of whether an adverse action was attributable to the discrimination; rather, the facts need only give plausible support to a 'minimal inference' of discriminatory motivation." *Novio v. New York Acad.*

*of Art*, 286 F. Supp. 3d 566, 578 (S.D.N.Y. 2017) (internal quotation marks and citations omitted); *see also Columbia Univ.*, 831 F.3d at 57 (noting that "the inference of discriminatory intent supported by the pleaded facts [need not] be *the most* plausible explanation of the defendant's conduct" (emphasis in original)).

Here, Plaintiff alleges that he engaged in protected activity in the form of: (i) "objecting in writing to sex-based prejudgment and biased language used by Title IX administrators"; (ii) "requesting assurance[s] of neutrality and due process protections in the Title IX process"; (iii) "seeking informal resolution and de-escalation of the matter"; (iv) "requesting reasonable mental health-related accommodations during ongoing proceedings"; (v) "reporting retaliatory and stigmatizing conduct by institutional actors and student organizations"; and (vi) "threatening [the] escalation of his concerns to the U.S. Department of Education's Office for Civil Rights and other oversight bodies." Dkt. No. 54 at ¶ 119. Defendants contend that Plaintiff's alleged actions do not constitute protected activities and, to the extent that Plaintiff sufficiently alleges any protected activities, there is no causal connection between Plaintiff's expulsion from Albany Law School and such protected activities. *See* Dkt. No. 73-4 at 25-27. In opposition, Plaintiff argues that Defendants mischaracterize Albany Law School's actions, including Plaintiff's expulsion, as neutral discipline. Dkt. No. 82 at 19.

As an initial matter, the Court agrees with Defendants that certain of Plaintiff's allegations do not involve complaints of discrimination prohibited under Title IX. A "protected activity" refers to "an action taken to protest or oppose statutorily prohibited discrimination." *Doe v. State Univ. of New York Purchase Coll.*, No. 21-cv-8417, 2024 WL 4266545, at *12 (S.D.N.Y. Sept. 23, 2024) (internal quotation marks and citations omitted); *see also Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021) (noting that "'protected activity' . . . includes a wide range of

16

activities, like reporting discrimination, testifying in a proceeding, or otherwise participating in an investigation about discrimination"). But "complaints must be sufficiently specific to make clear that the [plaintiff] is complaining about conduct prohibited by the applicable discrimination statute." *See McCullough v. John T. Mather Hosp. of Port Jefferson, New York, Inc.*, No. 16-cv-4968, 2019 WL 1755436, at *8 (E.D.N.Y. Apr. 19, 2019) (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).

In this case, Plaintiff's second, third, and fourth allegations listed above are unrelated to gender-based discrimination or sexual harassment. General requests for assurances of neutrality, due process protections, mental health accommodations, and informal resolution and de-escalation in connection with an ongoing Title IX investigation do not constitute "protected activity" under Title IX, as these requests are not actions opposing sex discrimination. *See, e.g.*, *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 758 (M.D. Tenn. 2019) (finding that "any general complaints [plaintiff] might have had about the handling of his [Title IX] investigation are not the equivalent of specific complaints about unlawful discrimination on the basis of sex under Title IX"), *appeal dismissed*, No. 19-5369, 2019 WL 5079251 (6th Cir. Sept. 18, 2019); *see also Baldwin v. New York State, State Univ. of New York, Coll. at Buffalo*, 690 F. App'x 694, 697 (2d Cir. 2017) ("Title IX prohibits retaliation against a person because that person has complained of sex discrimination." (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005)).

Additionally, Plaintiff's fifth allegation of "reporting retaliatory and stigmatizing conduct" is both vague and conclusory, and thus, does not qualify as protected activity. Conclusory assertions that conduct was "retaliatory," untethered to any allegations of specifically opposing sex discrimination, cannot themselves constitute the protected activity upon which Plaintiff's retaliation claim is based under Title IX. *See Staten v. City of New York*, No. 16-cv-5317, 2017

17

WL 2937698, at *9 (S.D.N.Y. July 10, 2017) (finding that allegations that plaintiff "was subject generally to 'retaliation' that is unconnected to any form of protected activity cannot support a claim of retaliation"), *aff'd*, 726 F. App'x 40 (2d Cir. 2018); *see also Martel v. New Eng. Home Care, Inc.*, No. 09-cv-1412, 2014 WL 3687738, at *14 (D. Conn. July 22, 2014) ("Complaints that are vague and ambiguous and do not sufficiently articulate the nature of the harassment do not constitute a protected activity." (internal quotation marks and citation omitted)).

Nevertheless, even assuming *arguendo* that any of Plaintiff's allegations qualify as "protected activity," Plaintiff fails to sufficiently allege a causal nexus between such protected activity and any adverse action taken by Albany Law School. Plaintiff alleges that his expulsion from Albany Law School in "close temporal proximity" to Plaintiff's protected activities is evidence of a causal connection between his protected activities and the adverse action. Dkt. No. 54 at ¶ 122. Plaintiff further alleges that senior administrators initially represented that he would receive a written reprimand or minor discipline as punishment for his misconduct in fabricating evidence, but Defendants decided to impose a more severe punishment only after he engaged in certain protected activities. *Id.* at ¶ 123. Defendants contend that there is no causal connection between Plaintiff's expulsion and any asserted protected activity. They note that Plaintiff began claiming bias on the basis of sex only after he understood that he would face disciplinary consequences for fabricating evidence. Dkt. No. 73-4 at 26-27. In addition, Defendants contend that Plaintiff's expulsion was not in retaliation for engaging in a protected activity, but for fabricating evidence in connection with his Title IX proceeding. *Id*.

The Court agrees with Defendants. "Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who

18

engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Baptiste v. City Univ. of New York*, 680 F. Supp. 3d 415, 423-24 (S.D.N.Y. 2023) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Although "a close temporal relationship between a plaintiff's participation in protected activity and [a defendant's] adverse actions can be sufficient to establish causation," *see Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), "where there was 'an intervening causal event that occurred between the protected activity and the allegedly retaliatory' event, mere temporal proximity between the protected activity and the retaliatory event is insufficient to support an inference of a causal connection[.]" *Wilson v. New York & Presbyterian Hosp.*, No. 17-cv-5012, 2021 WL 9493971, at *14 (E.D.N.Y. June 22, 2021) (quoting *Garcia v. Yonkers Bd. of Educ.*, No. 15-cv-767, 2018 WL 4007648, at *7 (S.D.N.Y. Aug. 21, 2018) (collecting cases)).

While Plaintiff alleges that he "object[ed] to sex-based bias," "request[ed] neutrality assurances," and sought mental health accommodations between January and February 2025, *see* Dkt. No. 54-1 at 2-3, the conduct for which Plaintiff was disciplined—i.e., his fabrication of evidence in a Title IX proceeding—was referred to a Disciplinary Panel in January 2025. Dkt. No. 54 at ¶¶ 70-74.[8]  Therefore, even assuming that an inference of retaliation could be drawn from the period between Plaintiff's purported protected activities and his expulsion from Albany Law School, the intervening disciplinary investigation into Plaintiff's fabrication and deletion of evidence "diminish[es] the probative force of that causal connection." *Carter v. TD Bank, N.A.*, No. 20-cv-1616, 2023 WL 3818589, at *12 (D. Conn. June 5, 2023) (finding a period of six weeks insufficient to demonstrate a causal connection for purposes of a Title VII retaliation claim given

---

[8] Plaintiff does not specify when he sought informal resolution and de-escalation nor when he threatened to escalate his concerns to the Office of Civil Rights. *See* Dkt. No. 54 at ¶¶ 51, 119.

"the intervening accusation of forgery and investigation of misconduct"), *aff'd*, No. 23-950, 2024 WL 2828470 (2d Cir. June 4, 2024).  Given that this intervening event breaks the causal chain, temporal proximity is not enough to demonstrate causation.  *See, e.g.*, *Dedewo v. CBS Corp.*, No. 18-cv-9132, 2022 WL 1031588, at *7 (S.D.N.Y. Apr. 5, 2022) (finding that plaintiff "fail[ed] to establish a causal connection because her own intervening misconduct severs the chain of causation").

Thus, Plaintiff also fails to sufficiently allege a causal connection between his purported protected activities and his expulsion.[9]  Accordingly, the Court also dismisses Plaintiff's Title IX retaliation claim.

### C.  Disability Discrimination Under the Rehabilitation Act

The Court next turns to Plaintiff's disability discrimination claim under Section 504 of the Rehabilitation Act against Albany Law School and Grand River Solutions.  Dkt. No. 54 at ¶¶ 144-158.

To make out a *prima facie* case of disability discrimination, a plaintiff must establish "(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [the Rehabilitation Act]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability."  *Davis v. Winston Preparatory Sch.*, No. 21-cv-8209, 2025 WL 1795350, at *17 (S.D.N.Y. June 30, 2025) (quoting *Harris v. Mills*, 572 F.3d 66, 73-74

---

[9] To the extent that Plaintiff claims that Albany Law School denied or ignored his accommodation requests, refused to intervene in his exclusion and stigmatization by student organizations, maintained "stigmatizing records," and refused to convert his dismissal from Albany Law School into a withdrawal in retaliation for Plaintiff engaging in protected activity, *see* Dkt. No. 54 at ¶ 121, such allegations lack merit for the same reasons set forth above: Plaintiff does not identify a causal connection to any protected activity.

(2d Cir. 2009)).

Plaintiff alleges that he suffers from mental health impairments that include acute anxiety, panic disorder, and stress and that these conditions substantially limit his ability to concentrate, sleep, regulate his emotions, and function in high pressure academic and disciplinary settings. Dkt. No. 54 at ¶ 145. Defendants argue that Plaintiff has not adequately alleged that he is a qualified individual with a disability. Dkt. No. 73-4 at 28-30. Specifically, Defendants contend, *inter alia*, that Plaintiff's pleadings contain inconsistent allegations regarding the nature of his alleged disabilities, and of the disabilities that Plaintiff claims in his Amended Complaint, namely, "acute anxiety," "panic disorder," and "stress-related conditions," Plaintiff does not plausibly allege how those conditions substantially limit one or more major life activities. *Id.* at 28-29.

The Court agrees with Defendants. The Rehabilitation Act incorporates the definition of "individual with a disability" set forth in the Americans with Disabilities Act of 1990. *See Frederick v. State*, 449 F. Supp. 3d 115, 124 (W.D.N.Y. 2020). A plaintiff is disabled if he "(1) has 'a physical or mental impairment that substantially limits one or more major life activities'; (2) has 'a record of such an impairment'; or (3) is 'regarded as having such an impairment.'" *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018) (quoting 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B)). In this case, Plaintiff fails to allege a qualifying disability under any of the three prongs.

In determining whether an impairment substantially limits a major life activity, under the first prong, courts consider "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Id.* (quoting *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005)). "'Major life activities' include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

21

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Lopez v. YWCA of Ne. New York*, No. 24-cv-1516, 2025 WL 641569, at *10 (N.D.N.Y. Feb. 27, 2025) (quoting 42 U.S.C. § 12102). Courts also compare a plaintiff's ability to perform such major life activities to the abilities of most people in the general population. *See Oyer v. New York State*, No. 19-cv-1201, 2020 WL 5642186, at *5 (W.D.N.Y. Sept. 22, 2020). Here, while Plaintiff alleges that he suffers from mental health impairments, he does not allege with specificity how his anxiety, panic disorder, and stress conditions substantially impact his ability to perform any major life activities. *See, e.g.*, *Pineda v. ESPN, Inc.*, No. 18-cv-325, 2018 WL 5268123, at *3 (D. Conn. Oct. 23, 2018) (dismissing disability discrimination claim where plaintiff generally alleged that her PTSD symptoms interfered with her ability to work but failed to specify "how those symptoms impacted her ability to perform her job as an Associate Producer"); *Oyer*, 2020 WL 5642186, at *5 (finding no disability where plaintiff alleged that his PTSD had *some* effect on his work, but did not plausibly allege that its impact was substantial).

Regarding the second prong, Plaintiff also fails to allege a record of disability. "A plaintiff has a 'record' of a disability if [he] 'has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Apuzza v. NYU Langone Long Island*, No. 22-cv-7519, 2023 WL 9022790, at *5 (E.D.N.Y. Dec. 29, 2023) (quoting 29 C.F.R. § 1630.2(k)(1)), *aff'd*, No. 24-493, 2025 WL 763425 (2d Cir. Mar. 11, 2025). Thus, "[e]ven at the pleading stage, . . . Plaintiff's failure to plausibly allege a substantial limitation to a major life activity precludes [him] from asserting that [he] has a record of disability." *Kane v. City of New York*, No. 22-cv-1339, 2022 WL 17553307, at *4 (E.D.N.Y. Dec. 9, 2022) (internal quotation marks and citation omitted); *Sayers v. Niagara Falls City Sch. Dist.*, No. 20-cv-703, 2022 WL 682640, at *5 n.7 (W.D.N.Y. Mar. 8, 2022) (same).

And as to the third prong, Plaintiff alleges that he was "regarded as" having an impairment because Albany Law School had knowledge of Plaintiff's impairments through his communications to administrators, medical documentation, accommodation requests, and "repeated disclosures of mental-health distress." Dkt. No. 54 at ¶ 146. Even assuming *arguendo* that Defendants regarded Plaintiff as having an impairment, Plaintiff has not alleged that he was subjected to an adverse action *because* of his purported impairments. *See, e.g.*, *Kunzler v. McDonough*, No. 19-cv-7181, 2024 WL 197927, at *7 (E.D.N.Y. Jan. 18, 2024) (finding that plaintiff failed to state a *prima facie* case of disability discrimination under the Rehabilitation Act "because he fail[ed] to show [that] any adverse action was taken against him *because* of his disability" (emphasis in original)), *appeal dismissed* (Dec. 13, 2024). In other words, Plaintiff does not allege that he was expelled from Albany Law School due to his anxiety, panic disorder, or stress. *See, e.g.*, *Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 164 (E.D.N.Y. 2020) (finding that plaintiff did not adequately allege that his termination was due to his vertigo, anxiety, or depression). Rather, Plaintiff appears to allege that he was improperly expelled because he was discriminated against on the basis of sex and in retaliation for engaging in protected activities. *See* Dkt. No. 54 at ¶¶ 130, 143 (alleging that "Plaintiff suffered expulsion . . . [a]s a direct and proximate result of Defendants' sex-based discrimination" and "Defendants' retaliatory conduct").

For these reasons, Plaintiff has not adequately pled a *prima facie* case of discrimination under the Rehabilitation Act. Thus, the Court dismisses Plaintiff's disability discrimination claim under the Rehabilitation Act.

### D. State Law Claims

Lastly, Plaintiff's Amended Complaint asserts state law claims for breach of implied

contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, gross negligence, and defamation under New York state law. Dkt. No. 54 at ¶¶ 159-217. Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). Dkt. No. 73-4 at 31. Plaintiff offers no response and instead argues that each state law claim alleged in the Amended Complaint is plausibly pled. *See* Dkt. No. 82 at 23-30.

Even where state law claims form part of the "same case or controversy," courts can decline to exercise supplemental jurisdiction over the claims pursuant to section 1367(c), if, among other reasons, the state law claims "substantially predominat[e] over the claim . . . over which the district court has original jurisdiction [or] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011). "The Second Circuit has also indicated that, as a general rule, district courts 'should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage.'" *Geminatio, Inc. v. Hustad*, No. 25-cv-361 (AMN/TWD), 2026 WL 194298, at *6 (N.D.N.Y. Jan. 26, 2026) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006)). Here, Plaintiff's federal and state claims form part of the same case or controversy, as they stem from the same series of events involving Albany Law School's Title IX investigation into Plaintiff, Plaintiff's subsequent disciplinary proceedings, and ultimate expulsion. The Court has also dismissed all of Plaintiff's federal claims.

However, before declining to exercise supplemental jurisdiction, "the Court must also consider whether values of judicial economy, convenience, fairness, and comity would be disserved by such a decision." *Principia Partners LLC v. Swap Fin. Grp., LLC*, No. 18-cv-7998, 2019 WL 4688711, at *5 (S.D.N.Y. Sept. 26, 2019); *see also Jones v. Ford Motor Credit Co.*, 358

24

F.3d 205, 214 (2d Cir. 2004). This case is in its early stages and discovery has not yet begun, so any concerns about judicial economy, convenience, and fairness are limited. *See 24 Seven, LLC v. Martinez*, No. 19-cv-7320, 2021 WL 276654, at *10 (S.D.N.Y. Jan. 26, 2021). Moreover, "[a]llowing Plaintiff to pursue [his] state law claims in state court would 'avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice.'" *Principia Partners*, 2019 WL 4688711, at *6 (quoting *Moran v. Tryax Realty Mgmt, Inc.*, No. 15-cv-8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016)). Accordingly, the balance of factors counsels in favor of declining to exercise supplemental jurisdiction. *See, e.g.*, *Doe v. Sacks*, 714 F. Supp. 3d 402, 415-16 (S.D.N.Y. 2024) (declining to exercise supplemental jurisdiction over remaining state law claims where plaintiff's Title IX claims have been dismissed); *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 400 (S.D.N.Y. 2019) (declining to exercise jurisdiction over remaining state law claims when plaintiff failed to plead sex discrimination under Title VII and Title IX).

For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice to re-filing in state court.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 73, is **GRANTED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 12, 2026
        Albany, New York

_____
Anne M. Nardacci
U.S. District Judge

25